Peter A. CRAWFORD, Plaintiff,
Appellant,

v.

Charles R. LAMANTIA, et al.,
Defendants, Appellees.

No. 93–2241.

United States Court of Appeals,
First Circuit.

Heard April 8, 1994.

Decided Sept. 14, 1994.

---

1. *Custis*, in effect, overrules this court's holding in *United States v. Paleo*, 967 F.2d 7, 11–13 (1st Cir.1992).

Alfred D. Ellis with whom Michelle L. Farmer and Cherwin & Glickman, Boston, MA, were on brief, for appellant.

Peter J. Macdonald with whom Jeffrey B. Rudman, Hale and Dorr, James J. Dillon, and Goodwin Procter & Hoar, Boston, MA, were on brief, for appellees.

Before BREYER,* Chief Judge, BOWNES, Senior Circuit Judge, and STAHL, Circuit Judge.

STAHL, Circuit Judge.

Plaintiff-appellant Peter Crawford filed a complaint charging defendants-appellees Paul Littlefield, Irving Plotkin and Harland Riker, Jr., individually and in their capacity

---

* Chief Judge Stephen Breyer heard oral argument in this matter but did not participate in the drafting or the issuance of the panel's opinion. The remaining two panelists therefore issue this opinion pursuant to 28 U.S.C. § 46(d).

as trustees of the Arthur D. Little, Inc. Employee Stock Ownership Plan and Trust ("the Plan" or "the ESOP"), with a breach of their fiduciary duties as defined under the Employee Retirement Income Security Act ("ERISA"). Plaintiff now appeals the district court's grant of summary judgment in favor of defendants. After careful consideration of plaintiff's arguments, we affirm.

## I.

### Factual and Procedural Background

Arthur D. Little, Inc. ("ADL") is a Cambridge-based international consulting firm. Plaintiff began working at ADL as a management consultant on June 7, 1981. In March 1988, ADL's Board of Director's voted to form an ESOP[1] pursuant to 26 U.S.C. § 4975(e)(7) of the Internal Revenue Code, and to propose a "going-private" transaction whereby ADL would 1) acquire all outstanding publicly held shares of ADL stock; 2) cancel all existing shares of ADL stock; 3) reissue "New Shares"; and 4) sell a portion of the New Shares to the ESOP with financing from ADL (which in turn received bank financing). Plaintiff objected to the transaction for a variety of reasons, and delivered to the Department of Labor a thirty-two page memorandum detailing his belief that, as part of the going-private transaction, the ESOP Trustees were intending to buy ADL common stock in excess of adequate consideration within the meaning of 29 U.S.C. § 1002(18). Plaintiff urged the Department of Labor to seek an injunction enjoining ADL from consummating its plan. The Department of Labor declined plaintiff's invitation, and on June 14, 1988, the ADL disinterested

shareholders approved the proposed transaction.

Thereafter, the ESOP Trustees negotiated a $32.8 million loan from ADL. The agreement provided that the to-be-purchased ADL stock would act as collateral for the loan, which was to be paid back to ADL over a seven-year period. The borrowed funds would then be used to purchase 546,520 New Shares of ADL common stock at $60 per share. At closing, the stock would immediately be deposited into a suspense account within the ESOP to be released over the next seven years, on a pro rata basis, to the individual accounts of qualified employee participants of the ESOP pursuant to the following arrangement. Each quarter, ADL agreed to make cash contributions to the ESOP in an amount sufficient to defray the principal and interest payments due ADL on the ESOP loan. The ESOP, in turn, agreed to return the contribution immediately to ADL in repayment of its note. Meanwhile, a proportionate number of the New Shares held in the suspense account as collateral would be freed and allocated by formula to the individual accounts of participating ADL employees. In effect, ADL was agreeing to repay the loan it was making to the ESOP to fund the purchase of the New Shares, with the employees ultimately reaping the benefits.

On November 30, 1988, plaintiff was informed that due to budget cuts, he was to be terminated.[2] Plaintiff negotiated an extension of salary and benefits until March 24, 1989, with an "unpaid leave of absence" to follow. On May 12, 1989, plaintiff filed his original complaint, *pro se*.[3] Plaintiff then resigned from ADL, effective May 18, 1989. Approximately one year later, on May 7,

---

1. The ESOP is an individual account plan, i.e. "a pension plan which provides for an individual account for each participant and for benefits based solely upon the amount contributed to the participant's account, and any income, expenses, gains and losses, and any forfeitures of accounts of other participants which may be allocated to such participant's account." 29 U.S.C. § 1102(34).

2. Plaintiff has not claimed in his amended complaint that he was terminated improperly in order to deprive him of standing to initiate or maintain this action under 29 U.S.C. § 1140.

3. Plaintiff originally named as defendants all trustees of the Memorial Drive Trust, the Memorial Drive Trust, the trustees of the ESOP, the ESOP and Arthur D. Little, Inc. These original defendants answered the complaint and thereafter jointly filed a motion for summary judgment. On June 9, 1993, before the court ruled on defendants' motion, all parties agreed to a joint stipulation dismissing all non-ADL ESOP trustee defendants from this action.

1990, plaintiff elected to receive his total vested distribution from the ESOP in the form of 47 shares of ADL common stock and a check in the amount of $51.49.[4] Plaintiff subsequently retained an attorney and, on June 10, 1993, filed a motion to amend his original complaint, together with an amended complaint seeking "recovery on behalf of the ESOP for breach of fiduciary duty for the Trustees' failure to act for the exclusive benefit of the participants and beneficiaries of the ESOP plan." Plaintiff also sought class certification at this time. The district court granted plaintiff's motion to amend on June 24, 1993. The defendants then renewed their motion for summary judgment, including further argument directed at the amended complaint. After accepting additional memoranda and hearing oral argument on defendants' motion, the district court granted summary judgment in favor of defendants, citing plaintiff's lack of standing.

## II.

### STANDARD OF REVIEW

■ As always, we review a district court's grant of summary judgment *de novo* and, like the district court, review the facts in a light most favorable to the non-moving party. *See e.g., Woods v. Friction,* 30 F.3d 255, 259 (1st Cir.1994). Our review is limited to the record as it stood before the district court at the time of its ruling. *Voutour v. Vitale,* 761 F.2d 812, 817 (1st Cir.1985), *cert. denied,* 474 U.S. 1100, 106 S.Ct. 879, 88 L.Ed.2d 916 (1986). Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A material fact is one which has the "potential to affect the outcome of the suit under the applicable law." *Nereida–Gonzalez v. Tirado–Delgado,* 990 F.2d 701, 703 (1st. Cir.1993). Thus, the non-

movant bears the burden of placing at least one material fact into dispute once the moving party offers evidence of the absence of a genuine issue. *Darr v. Muratore,* 8 F.3d 854, 859 (1st Cir.1993); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986) (Fed. R.Civ.P. 56(c) "mandates the entry of summary judgment, ... upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."). In other words, neither "conclusory allegations, improbable inferences, and unsupported speculation," *Medina–Munoz v. R.J. Reynolds Tobacco Co.,* 896 F.2d 5, 8 (1st Cir.1990), nor "[b]rash conjecture coupled with earnest hope that something concrete will materialize, is [ ]sufficient to block summary judgment," *Dow v. United Bhd. of Carpenters,* 1 F.3d 56, 58 (1st Cir.1993).

## III.

### DISCUSSION

On appeal, plaintiff makes essentially two arguments. First, plaintiff charges that the district court erred in ruling that plaintiff lacked standing to pursue his ERISA action because he was not a current employee throughout the litigation. Second, plaintiff contends that the court erred in concluding that he lacked standing because he had failed to present a colorable claim for benefits. We discuss each of these arguments below.

Plaintiff brought this action pursuant to 29 U.S.C. § 1132(a)(2), which authorizes a "participant," "beneficiary" or "fiduciary" to bring a civil action for breach of any fiduciary duty proscribed by 29 U.S.C. § 1109(a). Because plaintiff is neither a beneficiary nor a fiduciary, our central task is to determine whether plaintiff qualifies as a plan "participant" within the meaning of ERISA.

---

4. ESOP participants may elect to receive their vested benefits in one of two ways. They may either take the shares then existing in their individual account or ask that the ESOP cash out their account. In order to cash out a plan participant, the ESOP Trustees must sell the stock then held in the participant's individual account to ADL, at a price based on the most recent appraised value of new shares. The Trustees, in turn, pay the participant the resulting cash proceeds.

ERISA defines the term "participant" to include

any employee or former employee of an employer, or any member or former member of an employee organization, *who is or may become eligible to receive a benefit* of any type from an employee benefit plan which covers employees of such employer or members of such organization, or whose beneficiaries may be eligible to receive any such benefit.

29 U.S.C. § 1002(7) (emphasis supplied). In *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 117, 109 S.Ct. 948, 957–58, 103 L.Ed.2d 80 (1989), the Supreme Court interpreted this provision as providing for two distinct categories of ERISA participants: 1) "employees in, or reasonably expected to be in, currently covered employment;" or 2) former employees who have "a reasonable expectation of returning to covered employment" and/or a "colorable claim" to vested benefits. *Id.* at 117, 109 S.Ct. at 958 (internal quotations omitted).

Plaintiff maintains that he has standing under either prong. First, he argues that he was a current employee when he initiated this action and should remain a current employee throughout the litigation for purposes of standing despite his actual termination of employment. In the alternative, he asserts that he is a former employee with a colorable claim to vested benefits. We disagree with each of plaintiff's contentions.

■ With regard to plaintiff's argument that he should be considered an employee under *Firestone*'s first prong, we note that the basis for " '[s]tanding, since it goes to the very power of the court to act, must exist at *all stages* of the proceeding, and not merely when the action is initiated or during an initial appeal.' " *Sommers Drug Stores Co.*

*Employee Profit Sharing v. Corrigan*, 883 F.2d 345, 348 (5th Cir.1989) (emphasis supplied) (quoting *Safir v. Dole*, 718 F.2d 475, 481 (D.C.Cir.1983), *cert. denied*, 467 U.S. 1206, 104 S.Ct. 2389, 81 L.Ed.2d 347 (1984)). Therefore, although plaintiff may have had standing as a current employee when he brought this action, by the time he filed his amended complaint, he lost this standing on account of having terminated his employment with ADL and having collected all vested benefits then due him from the ESOP.[5] Accordingly, plaintiff cannot be considered a plan participant under *Firestone*'s first prong.

■ Plaintiff's argument that he has standing under *Firestone*'s second prong fares no better. Plaintiff does not contend that he has a reasonable expectation of returning to covered employment; instead, he argues that he has a colorable claim to benefits as a former employee because, "but for" defendants breach of duty, he would have received additional, vested benefits at the time he received his lump sum payment from the ESOP. Plaintiff reaches this conclusion in stages. First, he notes that, under 29 U.S.C. § 1109(a), fiduciaries who breach their fiduciary duties must make good to the plan any losses resulting from their breach. In this case, therefore, defendants would have to reimburse the plan the difference between the amount of money paid for the New Shares of ADL stock and the true market value. In deciding how that money should be allocated once returned to the fund, plaintiff asks the court, under the equitable powers granted by 29 U.S.C. § 1109(a), to allocate the funds to him and those members of the ESOP who were "cashed out" after the date of the transaction. Relying upon *Sommers*, 883 F.2d at 350, plaintiff contends that his share should be calculated by dividing the number of shares he received when he left (47) by the total number of

---

5. In his brief, plaintiff cites *Nishimoto v. Federman–Bachrach & Assoc.*, 903 F.2d 709 (9th Cir. 1990), as support for his position that ERISA standing is frozen in time as of the date of the initial filing of the complaint. Despite plaintiff's highly suspect manipulation of the language of *Nishimoto*, the case contradicts, rather than supports, plaintiff's argument. The issue in *Nishimoto* was whether a court could adjudicate pendent state claims following the disposition of the federal claim. At the time she filed her complaint, Nishimoto was a former employee who was eligible to receive vested benefits. She "settled" her ERISA claim by accepting a lump sum payment during the course of litigation. The court noted that Nishimoto's "receipt of all the benefits she was due under the plan indicates ... that the ERISA claim might have become subject to dismissal at that point." *Id.* at 715. Thus, Nishimoto's status at the time of filing was critical only as to whether the court was deprived of the power to adjudicate the remaining pendent state claims. *See id.*

shares (546,520) and multiply that fraction (.00008) by the overpayment.

In *Sommers,* however, plan participants brought a class action suit to recover money lost during the liquidation of a retirement trust. Plaintiffs claimed that their lump sum payments were less than the amount due because the trustees had sold the trust stock for less than fair market value. Each claimant had a set number of shares which were undervalued when it came time to cash them in. Thus, they were not paid the full extent of their benefits. We have no such claim before us.

Unlike the claimants in *Sommers,* plaintiff has failed to show that defendants' alleged breach of fiduciary duty had a direct and inevitable effect on *his* benefits. Defendants borrowed funds from ADL to acquire a set number of ADL New Shares, i.e., 546,520. Had defendants not overvalued the shares, they would not have borrowed as much money from ADL. Instead, a recalculation of the price of the stock would have resulted only in a smaller loan, lower principal and interest payments to be paid quarterly by ADL, and the same number of New Shares placed in the suspense account. It would *not* have resulted in a similar loan being made to the ESOP with any excess cash to be distributed to the accounts of the participants. The borrowed funds were not available for distribution; they were to be used *exclusively* to buy stock, or in the alternative, to pay back the loan.[6]

### IV.

#### Conclusion

As we have explained, plaintiff failed to establish standing to sue under ERISA.[7]

6. We acknowledge that because the ESOP note would have been for less money, the formula by which the encumbered shares were to be released to qualified participants *might* have altered the rate of release of *stock* one way or the other. The district court was in no position to know this, however, since plaintiff failed to argue this point and further failed to provide it with the ESOP agreement. Accordingly, there was no basis for the court to infer standing from a putative accelerated release of stock. Additionally, unlike the situation in *Reich v. Valley Nat. Bank of Arizona,* 837 F.Supp. 1259 (S.D.N.Y.1993), where the funding of the ESOP drove the company into bankruptcy, no adverse economic effect

The district court's grant of summary judgment in favor of defendant is therefore

***Affirmed. Costs to appellees.***

stemming from the overvaluation was alleged here, and thus that issue is not before us.

7. Plaintiff makes a final argument that our recent decision in *Vartanian v. Monsanto Co.,* 14 F.3d 697 (1st Cir.1994), requires a more expansive view of ERISA standing. Whatever merits plaintiff's argument might have, we note that *Vartanian* did not involve a situation, as here, where the plaintiffs could not "establish that they were former employees with a colorable claim to vested benefits" when faced with a motion for summary judgment. *See id.* at 702–03 n. 4. Accordingly, *Vartanian* is inapposite.