**[NOT FOR PUBLICATION-NOT TO BE CITED AS PRECEDENT]**

# United States Court of Appeals
## For the First Circuit

———

No. 01-1979

MARIE BERTHE FRANCOIS,

Plaintiff, Appellant,

v.

PUTNAM INVESTMENTS, LLC,

Defendant, Appellee.

———

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Joseph L. Tauro, U.S. District Judge]

———

Before

Lynch, Circuit Judge,
Campbell and Bownes, Senior Circuit Judges.

———

Malcolm J. Barach for appellant.
Ilene Robinson Sunshine, with whom Sullivan & Worcester LLP
were on brief, for appellee.

———

April 25, 2002

———

**BOWNES**, **Senior Circuit Judge**.   This is an appeal by plaintiff-appellant Marie Berthe Francois from a grant of summary judgment to defendant-appellee Putnam Investments, LLC.  Plaintiff is an African-American woman whose country of origin is Haiti.  She claims that defendant failed to promote her to a full-time position, as promised, because of her race and national origin.  The district court, in a well-reasoned opinion, found that plaintiff failed to establish a prima facie case of discrimination.  We affirm.

## I.  FACTS

Defendant's business is providing financial investment services.   Plaintiff first worked for defendant as a part-time temporary employee in Putnam's Image Operations Department, performing photocopying and related tasks.  She started work in November, 1994, but left her job less than a year later without giving notice.  This would normally render her ineligible to be rehired under Putnam's employment rules.

Plaintiff applied for work again with Putnam in September 1996.  Her previous employment record apparently was not noted by defendant because she was hired as a temporary processor in Putnam's Adjustments Department.  As a processor, plaintiff was involved in data processing and making adjustments in records of various financial transactions.  This work was considered to be

difficult and demanding. Newly-hired processors received dual training: direct instructions and on-the-job training. It soon became evident to plaintiff's supervisors that plaintiff was unable to grasp the fundamentals of the adjustments process. Defendant used a weekly tracking system to determine the productivity and accuracy of its processors. Plaintiff's track record showed that she did not approach Putnam's target standards and consistently performed below the level of her peers.

Defendant decided that plaintiff should be given the opportunity to retrain in the adjustments department in November, 1996. Three supervisors met with plaintiff and told her that if her performance improved after the retraining, she would be given the next available permanent appointment in the adjustments department. Plaintiff's retraining was not successful. According to defendant, plaintiff also added to her work difficulties by reporting late for work on three occasions between early November and December, 1996. She was given an early warning that lasted for three months, until March 3, 1997. Defendant had a policy that prohibited a temporary employee from becoming a permanent employee while under a disciplinary warning.

In mid-December, 1996, plaintiff filed a charge with the Massachusetts Commission Against Discrimination (MCAD) alleging that one of her supervisors, Ronald Cupples, delayed her permanent appointment, citing her lack of productivity. Plaintiff alleges,

-3-

however, that this was only a pretext to cover up racial discrimination. Another of her supervisors, Robbin Beauchamp, met with plaintiff to investigate her claim of racial discrimination and discuss the MCAD charge. As quoted at length, _infra_, plaintiff offered two differing accounts of this conversation, from which she claims racial discrimination against her can be found.

On January 9, 1997, Beauchamp again met with plaintiff to explore the possibility of her being transferred to the Image Operations Department. According to Beauchamp's affidavit, plaintiff did interview for a job in the Image Operations Department. She was rejected for the position after she told the hiring manager that she had previously worked in the department and did not like the management, rules, work, or atmosphere.

In late January, 1997, plaintiff was assigned to work on her department's "special projects." These projects were adjustments to customer accounts that were very extensive and took much longer than the regular process adjustments. She was assigned to work with Trisha Labonte, who reviewed and exercised quality control over all of plaintiff's work. Labonte met with plaintiff and pointed out to her that she was not doing the work properly and did not have a good understanding of what was required. Labonte gave plaintiff a copy of a memo that she (Labonte) was giving to the department supervisor. It contained a list of five mistakes

that plaintiff had made on a project on which she had worked. According to Labonte, plaintiff signed the memo without comment.

On February 6, 1997, plaintiff expressed an interest in two vacant processing jobs in other departments, but was told that she was ineligible for another processing position. On February 12, 1997, plaintiff resigned from Putnam. She left a note on Cupples's desk, which read:

> I will not be here on Friday, 2/14/97. I will not have a chance to see you and say good bye. If I don't, I want you to know it was a pleasure to have you as my supervisor. I had learn [sic] a lot from here. I will miss everybody.
>
> Sincerely,
>
> Marie Berthe Francois

Beauchamp stated in an affidavit that at the time plaintiff resigned, she told him that her husband was returning to Haiti for work and she needed to stay at home and care for their children.

## II. **STANDARD OF REVIEW**

Our review is de novo. Mulero-Rodriguez v. Ponte, Inc., 98 F.3d 670, 672 (1st Cir. 1996). We must consider the evidence "in the light most favorable to, and drawing all reasonable inferences in favor of, the nonmoving party." Feliciano de la Cruz v. El Conquistador Resort & Country Club, 218 F.3d 1, 5 (1st Cir. 2000).

-5-

Where the party opposing summary judgment has not presented specific competent proof of a genuine issue of material fact, we must affirm the judgment below. Rogan v. City of Boston, 267 F.3d 24, 27 (1st Cir. 2001); Crawford v. Lamantia, 34 F.3d 28, 31 (1st Cir. 1994), cert. denied, 514 U.S. 1032 (1995).

### III.  DISCUSSION

Plaintiff asserts two claims of racial discrimination: one under federal law for violation of Title VII of the Civil Rights Act of 1964, and one under the laws of Massachusetts, Mass. Gen. L. ch. 151B.  After ruling that plaintiff had not proven a prima facie case of discrimination under federal law, the district court dismissed the state law claim on the same grounds.

Plaintiff argues that the district erred by: failing to closely examine the overall record and total circumstances of the case; ignoring plaintiff's verified complaint (and sworn statement filed with the MCAD); and improperly weighing the validity of initial material offered as evidence.

We begin our analysis by examining the verified complaint and the sworn statement filed with the MCAD.  Under the law of this circuit a verified complaint is treated as the

> functional equivalent of an affidavit to the extent that it satisfies the standards explicated in Rule 56(e) (in summary judgment milieu, affidavits "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein").

Skeinkopf v. Stone, 927 F.2d 1259, 1262 (1st Cir. 1991); see also Simas, 170 F.3d at 46.

In reviewing the sworn allegations in plaintiff's complaint we keep in mind the restrictions that apply:

> At summary judgment, the district court cannot accept on faith conclusory assessments by claimants that unspecified and unattributed epithets were "derogatory" and "denigrating," let alone demonstrated discriminatory intent. See Pilgrim, 118 F.3d at 871 (noting that plaintiff's "[subjective] perception is not evidence" of discriminatory intent, hence "not enough to withstand summary judgment"); . . . see also Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) ("It is . . . well settled that an employee's subjective belief that he suffered an adverse employment action as a result of discrimination, without more, is not enough to survive a summary judgment motion, in the face of proof showing an adequate nondiscriminatory reason.").

Santiago v. Canon USA, Inc., 138 F.3d 1, 6 (1st Cir. 1998).

Paragraph 7 of the verified complaint states: "Francois was promised and assured that she would become permanent full-time because defendant was satisfied with her productivity." The basic question in this case is whether plaintiff adduced sufficient evidence that she left her employment at Putnam because racial discrimination barred her from becoming a permanent employee rather than her being denied permanent status because she was unable to do the required work. There is nothing in the record beyond plaintiff's self-serving statements that defendant "was satisfied with her productivity." Indeed, the affidavits and statements

-7-

filed by defendant are directly contrary. Moreover, the record shows that in the process of training for a temporary position, she quit without formal notice to defendant. And the note she left for Cupples did not contain any claims of racial discrimination; rather, it stated: "I want you to know it was a pleasure to have you as my supervisor." According to Beauchamp's affidavit, plaintiff told him that her reason for leaving was that her husband had returned to Haiti and plaintiff had to look after their children. On the record, we find it hard not to accept the district court's conclusion that an essential element of plaintiff's prima facie case is lacking - namely the existence of credible evidence that plaintiff was qualified to perform the permanent data processing position she sought.

Moreover, even assuming plaintiff had established a prima facie case, defendant presented overwhelming evidence that it had a legitimate, non-discriminatory reason for not promoting plaintiff to a permanent position. Evidence of pretext was simply absent. The pleadings and pretrial material show that the only evidence of racial discrimination came from plaintiff's conclusory allegations. The racially discriminatory statements that plaintiff alleges were made by Cupples and Joseph Larabee (Senior Operations Manager at Putnam who approved plaintiff's hiring in 1996) were denied by both. We realize that the denials do not erase the alleged statements and that if they were of sufficient significance to

warrant a finding, the question of whether or not they were made as asserted would be a disputed issue of material fact for the factfinder to determine. The question for us is not credibility, but materiality.

At her pretrial deposition, plaintiff testified as follows:

> Q. Can you tell me who at Putnam you think was responsible for discriminating against you because of your race?
>
> A. I don't know. After I filed the complaint, my supervisor approached me and told me, "I've got nothing to do with you, Marie. If it was for me, you'd be here forever. But I have orders from the upper management to get rid of you because you were hired by mistake."
>
> Q. Who told you that?
>
> A. Ron Kupples [sic].
>
> Q. He told you he was ordered to get rid of you?
>
> A. He got order [sic] from upper management to get rid of me, because, "I cannot fire you, you didn't do nothing." He called me on the December after they find [sic] out about the MCAD complaint.
>
> And then he called me not at his office, not at his cube, in the conference room where we always have the staff meeting. It's like a private room like this one here.
>
> He says, the first thing he asked me, "Why are you doing this, Marie? I'm not a racist." I said, "Then who is the racist?" He says, "I just want you to know I get [sic] order to get rid of you. You haven't done anything. I cannot just fire you like that. But I got,

-9-

they give me an order to get rid of you because you were hired by mistake."

I asked him, "What do you mean by that, I was hired by mistake?" He says to me, "Be smart, but I'm not a racist." I asked him, "Why did they want to get rid of me? I did not do anything." He said, "Be smart, Marie. Come on. It's just to let you know I'm not a racist."

Several pages later, plaintiff described a slightly different verison of what she viewed as racial discrimination:

I thought it was going to be at his cube. He said, "No, let's go to the conference room, that would be more private and confidential." He said, "Why are you doing this?" I said, "What, what am I doing?" He said, "We find out there's a complaint with the MCAD." And he showed me a copy of it.

I said, "Yes, I did." He said, "Why?" And I explained it to him. He said, "Marie, I'm not a racist. The real racist, you don't even point your finger at the real racist. My position is to get rid of you because you were hired by mistake. I get the order to get rid of you, somehow get Marie out of the company. But you haven't done nothing, I can't just fire you, because you do nothing."

But he said, "My job is to put you in the position to stress you out to leave the company." And then I asked him, I said, "What do you mean by I was hired by mistake? He stated, "Come on, Marie. Be smart. You know what I'm talking about." I said, "Okay."

Even if we accept the attributed statements as true, they are not sufficient alone or in addition to the other alleged instances of racial discrimination stated in the verified complaint to substantiate plaintiff's claim of racial discrimination. They

fail as a matter of law. See, e.g., Cardona v. United Parcel Service, 79 F. Supp. 2d 35, 42 (D.P.R. 2000) (noting a court should not accept a nonmovant's "conclusory allegations regarding discriminatory intent").[1]

We agree with the district court that plaintiff failed to make out a prima facie case of discrimination based on race and/or country of origin. Accordingly, we conclude that, based on the record and the pleadings, the district court properly dismissed both the federal and state law claims.

**Affirmed**.

---

[1]Paragraph 28 of the verified complaint states:
> On July 8, 1997 MCAD found there was sufficient evidence that Francois was discriminated against by Putnam based on her race/color and national origin and, subsequently, Francois informed MCAD that she would proceed with her case in court.

But there is no copy of such a finding in the record. Based on our reading of the record and statements made by counsel at oral argument, no finding was made by the MCAD. Plaintiff claims that she was told what is alleged by an employee of the MCAD. Plaintiff, however, does not know the name of the employee who supposedly gave her the information and offers no other support for her contention that the MCAD made such a finding.