Raymond **BOUCHER**, et al., Plaintiffs,

v.

Richard **WILLIAMS**, et al., Defendants.

No. CIV. 96–283–B.

United States District Court,
D. Maine.

May 5, 1998.

Marcia Cleveland, Brunswick, Tybe Brett, Pittsburgh, PA, for Plaintiff.

David McCarry, Robert M. Cheverie & Associates, East Hartford, CT, Melissa Hewey, Drummond, Woodsum, Plimpton & Macmahon, Portland, ME, for Defendants.

## ORDER AND MEMORANDUM
## OF DECISION

BRODY, District Judge.

Plaintiffs, Raymond Boucher and Alden R. Small, bring this ERISA-based class action against Defendants, Richard Williams, Douglas A. Hersom, and Richard C. McCubrey (the "Trustees"), Insurance Programmers, Inc. ("IPI"), and the U.A. Local 783 Health and Welfare Fund (the "Fund" or the "Trust"). Plaintiffs allege breach of fiduciary duty in violation of ERISA § 404, 29 U.S.C. § 1104 (Count I), failure to provide Plaintiffs with notice of a material modification of their welfare benefits plan in violation of ERISA §§ 101, 102, 104, 29 U.S.C. §§ 1021, 1022, 1024 (Count II), failure to report material plan modifications in financial statements filed with the Department of Labor in violation of ERISA § 103, 29 U.S.C. § 1023 (Count III), failure of the plan administrator to notify Plaintiffs of their COBRA rights in violation of 29 U.S.C. § 1166 (Count IV), illegal imbalance between Union and management Trustees resulting in undue influence of Union Trustees in the management of the Fund in violation of § 302 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 186(c)(5)(B) (Count V), and failure to provide Plaintiffs with requested plan documents in violation of ERISA §§ 104, 105(a), 29 U.S.C. §§ 1024, 1025(a)(Count VI).

In separate motions Plaintiffs have moved for summary judgment on Counts I, II, and VI, and for class certification. Defendants have moved for summary judgment on all counts.

## I. BACKGROUND

This case centers around the management of the U.A. Local 783 Health and Welfare Fund, established in 1977 pursuant to a collective bargaining agreement between U.A.

Local 783 ("the Union") and Union employers to provide health insurance and related benefits to employees of those Union employers ("participants"). Pls.' Statement of Material Fact ("Pls.' SOF") ¶¶ 4, 5; Defs.' Statement of Material Fact (9/30/97) ("Defs.' SOF 1") ¶ 1. Plaintiffs Boucher and Small were two such participants.

The Fund was created by an Agreement and Declaration of Trust on December 1, 1977, and was extended by an Amended and Restated Agreement and Declaration of Trust (the "Plan") adopted on January 1, 1990. Pursuant to the Plan, which qualifies as a multi-employer health and welfare plan under the Employee Retirement Income Security Act ("ERISA"). 29 U.S.C. § 1002(37), employers are required to make periodic payments to the Fund on behalf of their employees. Plan Art. IV. These payments are then placed in individual participants' "allocation accounts" by the Trustees of the Fund. Plan Art. II, § 4. The allocation accounts are drawn upon to pay health insurance premiums for each participant or to reimburse the participant for out-of-pocket medical expenses. The allocation accounts may also be used for other health related programs including group life insurance, payment of disability benefits, payment of death benefits, and asbestos screening.

The Plan requires that the Fund be managed by four Trustees, half appointed by the Union and half by the employers. Plan Art. V, § 1. Since July 9, 1991, the Fund has been administered by three Trustees, rather than the four required by the Plan: Defendant Richard Williams, a Union Trustee and business manager of the Union, Defendant Douglas Hersom, also a Union Trustee, and Defendant Richard McCubrey, an employer Trustee. Defs.' SOF 1 ¶¶ 3, 4. In addition to maintaining allocation accounts, the Trustees are required to maintain an "administrative account," consisting of the remainder of the Trust, including all earnings on Trust assets. Administrative expenses of the Trust and benefit payments and expenses not properly allocable to the allocation accounts must be charged to the administrative account. *Id.* The Fund is administered by Defendant IPI. IPI, under the direction of the Trustees, is responsible for the accounting, bookkeeping, and clerical services of the Trust Fund as well as all reporting and disclosure requirements imposed by ERISA. Plan Art. I, § 6.

Plaintiffs Boucher and Small worked for Union employers who made contributions to the Fund on their behalf that were placed in the appropriate allocation accounts. When Boucher resigned from the Union, and presumably from a contributing employer, in February, 1991, the balance in his account was allegedly $18,331.26. Pls.' SOF ¶ 14. Part of Boucher's balance was used after his retirement to pay his group health insurance premiums through 1993. Pls.' SOF ¶ 15. When Small terminated his membership in the Union on April 1, 1993, the remaining balance in his account was allegedly $6,000.00. Small, upon leaving the Union, withdrew from group health coverage and elected to "freeze" his remaining balance for reimbursement of out-of-pocket medical expenses. Pls.' SOF ¶ 16.

In June of 1993, the three Trustee Defendants amended the Plan, adding the following paragraph to Art. II, § 5:

> Notwithstanding the foregoing, if a Participant who has been a member of the Union shall cease to be a member of the Union (other than by his death), he (and his beneficiaries) shall cease to be eligible for all benefit programs of the Fund as of the date he ceases to be a member of the Union (or as of January 1, 1994 in the case of any such Participant who has ceased to be a member of the Union prior to January 1, 1994). In such event, all amounts in his allocation account shall be transferred to the administrative account.

Defs.' Ex. 10. Pursuant to this amendment (the "1993 Amendment"), on January 1, 1994, the remaining balances in Plaintiffs' allocation accounts were forfeited and the Fund ceased making payments for Plaintiffs' benefit programs.

Plaintiffs originally brought this action solely on behalf of participants who had their allocation accounts forfeited by the 1993 Amendment, and their beneficiaries. After discovery, Plaintiffs amended their Complaint to allege that Defendants breached their fiduciary duties (Count I) to all partici-

pants in the Fund, as well as those whose accounts were forfeited, by generally mismanaging the Fund. As such, all counts are brought by those participants whose accounts were forfeited, and Count I is also brought on behalf of all participants in the Fund.

Plaintiffs seek various forms of equitable relief including a declaratory judgment, invalidation of the 1993 Amendment, an accounting, an order to make good to the Trust any and all losses resulting from breach of fiduciary duties, removal of the Trustees and other fiduciaries, and "such other equitable/remedial relief as appropriate" under ERISA § 409, 29 U.S.C. § 1109. Plaintiffs also ask the Court to impose statutory penalties of $100.00 per day from the day of Defendants' alleged failure to comply with requests for information under ERISA § 502(c)(1), 29 U.S.C. § 1132(c)(1).

## II. SUMMARY JUDGMENT

Summary judgment is appropriate in the absence of a genuine issue as to any material fact and when the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). An issue is genuine for these purposes if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A material fact is one that has "the potential to affect the outcome of the suit under applicable law." *Nereida–Gonzalez v. Tirado–Delgado*, 990 F.2d 701, 703 (1st Cir. 1993). For the purposes of summary judgment the Court views the record in the light most favorable to the nonmoving party. *See McCarthy v. Northwest Airlines, Inc.*, 56 F.3d 313, 315 (1st Cir.1995).

## III. DISCUSSION

### Count I

Both Plaintiffs and Defendants move for summary judgment on Count I.[1] In Count I Plaintiffs allege that Defendants, by adopting the 1993 Amendment to the Plan, breached the fiduciary duty owed to Plan participants in violation of ERISA § 404, 29 U.S.C. § 1104.[2] Specifically, Plaintiffs claim that the 1993 Amendment violated the terms of the Plan and ERISA's exclusive benefit rule. In addition, Plaintiffs allege that Defendants' failure to provide timely notice of the 1993 Amendment constituted a breach of fiduciary duty. Plaintiffs seek a declaratory judgment and ask the Court to invalidate the 1993 Amendment.

### A. Are Defendants Fiduciaries?

The fiduciary duties imposed by ERISA § 404 apply only to those properly classified as fiduciaries. 29 U.S.C. § 1104; *Santana v. Deluxe Corp.*, 920 F.Supp. 249, 253 (D.Mass. 1996). Defendants argue that neither the Fund nor IPI are "fiduciaries," and that they are therefore entitled to summary judgment on Count I, at least insofar as it applies to the forfeiture of allocation accounts.

ERISA assigns fiduciary status to persons "named [as fiduciaries] in the plan instrument, or who, pursuant to a procedure specified in the plan [are] identified as fiduciar[ies] ...." 29 U.S.C. § 1102(a)(2); *see also*, 29 U.S.C. § 1105(c)(1) (permitting allocation of fiduciary responsibility pursuant to the plan instrument). The Plan designates the Trustees as "named fiduciaries." Although neither the Fund nor IPI are named fiduciaries, they may still qualify as functional fiduciaries with respect to the Plan. *Beddall v. State Street Bank and Trust Co.*, 137

1. The Court notes that Defendants cite not one case in support of their Motion for Summary Judgment as to Counts I–V. Local Rule 7(a) requires that "[e]very motion shall incorporate a memorandum of law, *including citations and supporting authorities.*" Ordinarily, this deficiency would warrant a dismissal of Defendant's motion. *Bellino v. Schlumberger Technologies, Inc.*, 753 F.Supp. 394, 396 n. 1 (D.Me.1990). The Court, however, declines to penalize Defendants for their inadequate memoranda. Although Plaintiffs do occasionally cite cases to support their arguments, they are equally guilty of inartful and inappropriate pleading.

2. Plaintiffs also allege that Defendants mismanaged the Fund in violation of their fiduciary duties. As Plaintiffs' standing to pursue this claim hinges in part on the validity of the 1993 Amendment, the Court addresses the forfeiture of Plaintiffs' allocation accounts first.

F.3d 12, 18 (1st Cir.1998). Section 3(21)(A) of ERISA provides:

> a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan. Such term includes any person designated under section 1105(c)(1)(B) of this title.

29 U.S.C. § 1002(21)(A).

■ Whether an individual or entity is an ERISA fiduciary must be determined by focusing on the function performed, rather than on the title held. *Blatt v. Marshall & Lassman,* 812 F.2d 810, 812 (2d Cir.1987). As such, the Court addresses the fiduciary status of IPI and the Fund separately.

### (1) *IPI as Fiduciary*

Although Defendants agree that IPI is an ERISA plan "administrator" pursuant to 29 U.S.C. § 1002(16)(A), they argue that IPI is not a fiduciary insofar as the 1993 Amendment is concerned because it is neither a "named fiduciary" nor does it exercise "discretionary authority or responsibility" as a functional fiduciary pursuant to 29 U.S.C. § 1002(21)(A). Plaintiffs respond that a plan administrator is a per se fiduciary. In the alternative, Plaintiffs claim that IPI is a fiduciary because it exercised authority or control respecting management or disposition of Plan assets and because it has discretionary authority and discretionary responsibility in the administration of the Plan.

Plaintiffs first contend that plan administrators are in all cases fiduciaries, and, without citing any cases to that effect, insist that Defendants' argument is "preposterous." Plaintiffs rely solely on the Department of Labor's ("DOL") interpretive regulations which state: "... a plan administrator or a trustee of a plan must, be [sic] the very

nature of his position, have 'discretionary authority or discretionary responsibility in the administration' of the plan within the meaning of section 2(21)(A)(iii) of the Act." Dept. of Labor, Interpretive Bulletin 75–8, 29 C.F.R. § 2509.75–8 (1995).

■ Plaintiffs, however, fail to note that the DOL regulations also provide: "a person who performs purely ministerial functions ... for an employee benefit plan within a framework of policies, interpretations, rules, practices and procedures made by other persons is not a fiduciary because such person does not have discretionary authority or discretionary control ...." *Id.* This provision suggests, and case law confirms, that fiduciary status depends not on whether one is titled "plan administrator," but on whether a plan administrator has discretionary policy-making power or simply performs ministerial functions within a framework of policies made by others. *See Cottrill v. Sparrow, Johnson & Ursillo, Inc.,* 74 F.3d 20, 22 (1st Cir.1996) (quoting *Pohl v. National Benefits Consultants, Inc.,* 956 F.2d 126, 129 (7th Cir.1992)) ("Under ERISA, 'the existence of discretion [is] a sine qua non of fiduciary duty.'"); *Pohl,* 956 F.2d at 129 (where plan administrator function was clerical, mechanical, and ministerial, it was not discretionary). As the DOL regulations and section 1002(21)(A)(1) indicate, "it is a person's ability to make policy decisions outside of a pre-existing or separate framework of policies, practices and procedures which saddles that person with ERISA fiduciary liability." *Munoz v. Prudential Ins. Co. of America,* 633 F.Supp. 564, 568 (D.Colo.1986) (plan administrator not a fiduciary where neither language of plan nor conduct of administrator suggest it has ability to perform non-ministerial functions); *see also Useden v. Acker,* 947 F.2d 1563, 1574 (11th Cir.1991) ("An entity which assumes discretionary authority or control over plan assets will not be considered a fiduciary if that discretion is sufficiently limited by a pre-existing framework of policies, practices and procedures."); *Gelardi v. Pertec Computer Corp.,* 761 F.2d 1323, 1325 (9th Cir.1985) (per curiam) (holding that administrative actions within a framework of policies established by others do not constitute the

exercise of fiduciary responsibility); *see also Varity Corp. v. Howe,* 516 U.S. 489, 511, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996) (citing 29 C.F.R. § 2509.75–8) ("... a plan administrator engages in a fiduciary act when making a discretionary determination about whether a claimant is entitled to benefits under the terms of the plan documents.").

 "The key determinant of whether a person qualifies as a functional fiduciary is whether that person exercises discretionary authority in respect to, or meaningful control over, an ERISA plan, its administration, or its assets (such as by rendering investment advice)." *Beddall,* 137 F.3d at 18; *Varity,* 516 U.S. at 498, 116 S.Ct. 1065 (quoting 29 U.S.C. § 1002(21)(A)) ("a 'person is a fiduciary with respect to a plan' and therefore subject to ERISA fiduciary duties 'to the extent' that he or she 'exercises any discretionary authority or control respecting management' of the plan, or 'has any discretionary authority or discretionary responsibility in the administration' of the plan"). "[T]he mere exercise of physical control or the performance of mechanical administrative tasks generally is insufficient to confer fiduciary status." *Beddall,* 137 F.3d at 18.

 Therefore, the Court, viewing the evidence in a light most favorable to Plaintiffs, considers whether IPI possesses the requisite discretionary powers to render it a functional fiduciary. The Court looks first to the terms of the Plan. The Plan gives the administrator the power, under the direction of the Trustees, to "administer" the Fund, to coordinate and administer the accounting, bookkeeping, and clerical services of the Fund, to prepare reports required by law, to assist in the collection of contributions and to "perform such other duties and furnish such other services as may be assigned, delegated, or directed or as may be contracted by the trustees." Plan Art. I, § 6. These stated ministerial functions, alone, do not render IPI a fiduciary. *See* 29 C.F.R. § 2509.75–8, D–2; *Beddall,* 137 F.3d at 20; *Santana,* 920 F.Supp. at 254–55. On the other hand, the Plan explicitly grants the Trustees power to

provide benefit programs at their discretion, Plan Art. II, § 2, to manage, acquire, dispose and/or invest assets of the fund at their "exclusive discretion," to promulgate rules for administration of the Trust, including eligibility requirements for benefits, and to interpret the terms of the Plan. Plan Art. III. Although the terms of the Plan permit the Trustees to delegate some of their fiduciary powers to third parties, Plaintiffs do not point to any subsequent delegation of fiduciary responsibility to IPI.[3]

Plaintiffs claim that IPI "managed the assets of the Plan" thereby rendering it by its actions a fiduciary. As evidence of "asset management" Plaintiffs note only that IPI collected contributions and paid insurance premiums on behalf of participants, advanced premiums to participants who had insufficient amounts in their allocation accounts, and held responsibility for ensuring that participants with negative balances self-paid the difference.

 The Court notes that collection of contributions and processing of claims, in the absence of discretionary policy-making power, are not fiduciary functions. 29 C.F.R. § 2509.75–8 at Q–D–2(8) & (10). As for Plaintiffs' contention that IPI advanced premiums to certain participants, the deposition of Diane Klobukowski, vice president/general manager of IPI, upon which Plaintiffs base their allegation, clearly indicates the contrary. Klobukowski Dep. at 49 ("Q: Is it true that the plan advanced payment for premiums? A: No"). Moreover, even if these functions are properly classified as "asset management," Plaintiffs have failed to provide any evidence that IPI had discretion in carrying them out. *See Cottrill,* 74 F.3d at 21–22.

On the other hand, Klobukowski testified that IPI "administer[s] the plans in accordance with the plan of benefits and at the direction of the board of trustees," and classified IPI's function as that of "push[ing] paper." Klobukowski Dep. at 6. She noted that IPI "perform[s] the day-to-day functions," *id.*

3. Noticeably absent from the record is a services contract which presumably delegates specific duties to IPI as administrator. Such a contract would ordinarily be "[t]he starting point for reasoned analysis of ... fiduciary status..." *Beddall,* 137 F.3d at 19.

at 7, and "administer[s] the benefits according to the direction of the board of trustees." *Id.* at 9. "I make sure Insurance Programmers performs [sic] what we are expected to by the board." *Id.* Klobukowski's testimony is consistent with the terms of the Plan which place fiduciary responsibilities exclusively in the hands of the Trustees. After thorough review of the terms of the Plan and the scant evidence proffered by Plaintiffs on this matter, the Court is persuaded that IPI is not a fiduciary.[4] As such, the Court grants summary judgment to Defendant IPI on Count I as it relates to the adoption and implementation of the 1993 Amendment.

#### (2) *Fund as Fiduciary*

■ The Fund is not a "person" as that term is defined by ERISA and is therefore not subject to claims of breach of fiduciary duty under section 404. *See Adams v. Koppers Co., Inc.,* 684 F.Supp. 399, 401 (W.D.Pa. 1988) (plan not a "person" and therefore not proper defendant in civil action under 29 U.S.C. § 1140). The civil enforcement provisions of ERISA permit participants to bring an action for appropriate relief under section 1109 which governs liability for fiduciary breaches. 29 U.S.C. § 1132(a)(2). Section 1109 provides:

> Any *person* who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon such fiduciaries by this subchapter shall be personally liable . . . .

29 U.S.C. § 1109(a) (emphasis added). Plans are not included within ERISA's definition of "persons." 29 U.S.C. § 1002(9). *See Adams,* 684 F.Supp. at 400–01. Therefore, they are not properly subject to breach of fiduciary duty claims.

Plaintiffs cite *Auto Club Ins. Ass'n v. Safeco Life Ins. Co.,* 833 F.Supp. 637 (W.D.Mich. 1993) for the proposition that the Fund is a proper defendant. *Auto Club* concluded that a plan is a proper defendant to a claim to recover benefits due under the terms of the plan pursuant to 29 U.S.C. § 1132(a)(1)(B). *Id.* at 643. That case did not involve a claim, such as the one presented here, under 29 U.S.C. § 1132(a)(2) for breach of fiduciary duty which is available only against "persons" who are fiduciaries. 29 U.S.C. §§ 1002(21)(A), 1109. Nor does *U.S. Steel Mining Co., Inc. v. District 17, United Mine Workers of America,* 897 F.2d 149 (4th Cir. 1990), support Plaintiffs' claim. In that case, the court concluded that a fund could be a fiduciary in a section 1132(a)(3) claim where the fund was a plaintiff that also functioned as the plan administrator. Such is not the case here. The Court therefore grants summary judgment on Count I as to the Plan.

#### B. *Did the Trustees Breach a Fiduciary Duty?*

#### (1) *Plan Amendment as a Fiduciary Act*

Plaintiffs allege that the Trustees violated their fiduciary duty by adopting the 1993 Amendment. Section 404 sets forth the obligation of a fiduciary under ERISA. 29 U.S.C. § 1104(a)(1). A fiduciary of a health benefits plan must:

> discharge his duties with respect to a plan solely in the interest of the participants and their beneficiaries; and—
>
> (A) for the exclusive purpose of:
>
> > (i) providing benefits to participants and their beneficiaries; and
> >
> > (ii) defraying reasonable expenses of administering the plan;
>
> (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters

---

4. Even if IPI was functioning as a fiduciary by collecting contributions, paying and advancing insurance premiums, and ensuring that participants paid off negative balances, as Plaintiffs claim, "a person is a fiduciary only with respect to those aspects of the plan over which he exercises authority or control." *Sommers Drug Stores Co. Employee Profit Sharing Trust v. Corrigan Enters., Inc.,* 793 F.2d 1456, 1459–60 (5th Cir.1986). *See Beddall,* 137 F.3d at 18 ("fiducia- ry status is not an all or nothing proposition; the statutory language indicates that a person is a plan fiduciary only 'to the extent' that he possesses or exercises the requisite discretion or control"); *Varity,* 516 U.S. at 498, 116 S.Ct. 1065. Plaintiffs have offered no evidence suggesting that IPI had discretionary involvement in the adoption or implementation of the 1993 Amendment that forfeited Plaintiffs' allocation accounts.

would use in the conduct of an enterprise of a like character and with like aims; (C) by diversifying the investments of the plan so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so; and

(D) in accordance with the documents and instruments governing the plan . . . .

29 U.S.C. § 1104(a).

Plaintiffs claim that the 1993 Amendment violates § 404 because (1) it is not in accordance with the documents and instruments of the Plan; (2) it is not solely in the interest of the participants and for the exclusive purpose of providing benefits to the participants; and (3) Defendants failed to provide Plaintiffs with timely notice of the Amendment.

Before reaching the issue of whether there has been a breach of fiduciary duty, the Court considers whether the adoption of the 1993 Amendment by the Trustees invokes fiduciary obligations under ERISA. Plaintiffs contend that "in the multiemployer plan context, plan amendments are treated as fiduciary functions, and amendments not made in furtherance of the participants' interests are invalid." [5] Pls.' Mot. Summ. J. at 15. Plaintiffs rely entirely on *Siskind v. Sperry Retirement Program, Unisys,* 47 F.3d 498 (2d Cir.1995). The issue, however, is not as clear-cut as Plaintiffs suggest.

In *Siskind,* former employees of the defendant corporation brought suit challenging an amendment to a single-employer pension plan that excluded the plaintiffs from a selective early retirement incentive program. *Id.* at 500. The plaintiffs alleged that the plan amendment, adopted by an employee benefits committee at the behest of the corporation, constituted a breach of the fiduciary duty to act for the sole benefit of plan participants. The Second Circuit held that the plan trustees' amendment of a single-employer plan *did not* invoke fiduciary obligations. *Id.* at 506. The court reasoned that "[i]n the single employer setting, where plan trustees are also corporate officers, their actions must

be made in the interest of both the plan's participants and the employer." *Id.* As such, the court concluded that it would be inapposite to hold single-employer plan trustees to fiduciary standards in adopting plan amendments. *Id.*

In dicta, however, the Second Circuit noted that "[i]n the multiemployer plan context, courts have treated plan amendments as fiduciary functions, invalidating amendments not made in furtherance of the participants' and beneficiaries' interests." [6] *Id.* at 505–06. The court explained:

In the multiemployer setting [where the plan is jointly administered by trustees representing the employers and trustees appointed by and representing the union], trustees amending a pension plan 'affect the allocation of a finite plan asset pool' to which each participating employer has contributed. For that reason trustees administering a multiemployer plan are expected to act solely for the benefit of beneficiaries and are barred from acting on the employers' behalf.

*Id.* at 506 (citations omitted).

As the Third Circuit has recently noted, *Siskind* drew heavily from *Musto v. American General Corp.,* 861 F.2d 897, 912 (6th Cir.1988), in distinguishing between single- and multi-employer plans. *See Walling v. Brady,* 125 F.3d 114, 117 (3d Cir.1997). However, the Sixth Circuit, six months prior to *Siskind,* issued *Pope v. Central States S.E. & S.W. Areas Health and Welfare Fund,* 27 F.3d 211, 213–14 (6th Cir.1994), which found no reason to treat multi-employer and single-employer plans differently when the sponsor of either is merely amending its plan. In *Pope,* the Sixth Circuit held that the trustees of a multi-employer welfare benefit plan were not subject to fiduciary standards in amending a plan to reduce benefits in order to protect its financial stability. The court "decline[d] to follow the dictum in *Musto* stating that trustees who 'amend[ ] a multi-employer plan . . . "affect the allocation of a finite asset

---

**5.** Curiously, Defendants do not contest this assertion.

**6.** The court relied on two Second Circuit cases, *Chambless v. Masters Mates & Pilots Pension*

*Plan,* 772 F.2d 1032, 1040 (2d Cir.1985), and *Agro v. Joint Plumbing Indus. Bd.,* 623 F.2d 207, 210 (2d Cir.1980).

pool between participants," . . . and hence act as plan administrators subject to a fiduciary duty.'" *Id.* at 213 (citations omitted). The court reasoned:

> As in cases involving single-employer plans, the policy encouraging employers to establish welfare benefit plans is served by permitting trustees of multi-employer plans to amend such plans without fiduciary considerations. Furthermore, and again like cases involving single-employer plans, imposition of fiduciary obligations in cases involving multi-employer plans would divide the trustees' loyalties and might keep them from pressing for generous welfare plan benefits.

*Id.* at 213–14 (citations omitted). The court also noted, "[a]s in cases involving single-employer welfare-benefit plans, we 'would, in effect, accord employees a vested right to health and welfare benefits,' if, based on ERISA's fiduciary requirements, we were to adopt a rule restricting the amendment of multi-employer welfare benefit plans to situations where the amendment best serves the interests of plan participants and beneficiaries." *Id.* at 213 (citations omitted). Thus, *Pope* undermined the basis upon which *Siskind*'s single-employer/multi-employer distinction was founded.

Although the First Circuit has not weighed in on this issue, subsequent case law strongly suggests that the *Pope* approach is the preferable one, especially in the context of welfare benefit plans such as the one at issue here. In *Curtiss–Wright Corp. v. Schoonejongen,* 514 U.S. 73, 115 S.Ct. 1223, 131 L.Ed.2d 94 (1995), the Supreme Court considered the sufficiency of a single-employer welfare benefit plan's amendment procedure under ERISA § 402(b)(3). The Court noted:

> In interpreting § 402(b)(3), we are mindful that ERISA does not create any substantive entitlement to employer-provided health benefits or any other kind of welfare benefits. Employers *or other plan sponsors* are generally free under ERISA, for any reason at any time, to adopt, modify, or terminate welfare plans. *See Adams v. Avondale Industries, Inc.,* 905 F.2d 943, 947 (6th Cir.1990) ("[A] company does not act in a fiduciary capacity when deciding to

amend or terminate a welfare benefits plan"). Nor does ERISA establish any minimum participation, vesting, or funding requirements for welfare plans as it does for pension plans. *See Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 90–91, 103 S.Ct. 2890, 2896–2897, 77 L.Ed.2d 490 (1983). Accordingly, that Curtiss–Wright amended its plan to deprive respondents of health benefits is not a cognizable complaint under ERISA; the only cognizable claim is that the company did not do so in a permissible manner.

*Id.* at 78, 115 S.Ct. 1223 (emphasis added). Although *Curtiss–Wright* involved a single-employer welfare benefits plan, the language used by the Court, particularly "or other plan sponsors," suggests that the multi-employer welfare plan trustees are also free from fiduciary constraints when adopting plan amendments. Looking to ERISA's definition of "plan sponsor," one finds that it includes the joint board of trustees of a multi-employer plan. 29 U.S.C. § 1002(16)(B).

The following year, the Supreme Court extended *Curtiss–Wright*'s holding, that plan sponsors are generally free to modify welfare plans, to pension plans. *Lockheed Corp. v. Spink,* 517 U.S. 882, 116 S.Ct. 1783, 1789–90, 135 L.Ed.2d 153 (1996). In *Lockheed,* the Court once again failed to distinguish between single-employer and multi-employer plans and applied its holding to "other plan sponsors." *Id.* The Court concluded that Lockheed acted not as a fiduciary but as a settlor when it amended the plan, noting that "[w]hile other portions of ERISA govern plan amendments, . . . the act of amending a pension plan does not trigger ERISA's fiduciary provisions." *Id.* at 1790.

In the wake of these decisions, the Third Circuit has had an opportunity to address the issue presented here in the context of multi-employer pension plans. *Walling v. Brady,* 125 F.3d at 117–18. The court took note of *Siskind*'s reliance on the Sixth Circuit's since discredited *Musto* decision and analyzed *Pope* to "stand[ ] for the proposition that the Sixth Circuit, despite its authorship of *Musto,* is prepared to treat single- and

multi-employer plans similarly ...." *Id.* at 118. The Third Circuit explained:

> *Lockheed* speaks of "plan sponsors," a term that applies to both single-employer sponsors and multi-employer sponsors under ERISA, and the opinion lacks any hint that single- and multi-employer plans should be analyzed differently. At the same time, the silence of *Lockheed* on this topic could arguably be a result of its subject matter, a single-employer plan. The Court did not mention multi-employer plans nor state that its decision was intended to reach them or to address their particular characteristics.
>
> While we do not read *Lockheed* to be the definitive word that there are never valid occasions on which to distinguish between the two types of plans, we find that the instant case is clearly one in which the fiduciary duty does not apply. *Lockheed* states in simple language that "[p]lan sponsors who alter the terms of a plan do not fall into the category of fiduciaries."

*Id.* at 117 (citations omitted). The court therefore concluded, "[i]n sum, the ERISA fiduciary obligations simply do not apply to a plan amendment.... The Trustees, acting collectively as settlor, were free to make any amendment that did not run afoul of relevant ERISA regulations." *Id.* at 120.

■ Significantly, other circuits have debunked the single-employer/multi-employer distinction in the context of welfare benefit plans where, unlike pension plans, benefits are not vested.[7] In *Milwaukee Area Joint Apprenticeship Training Comm. v. Howell*, 67 F.3d 1333 (7th Cir.1995), the Seventh Circuit held that fiduciary obligations do not apply to amendment of multi-employer welfare benefit plans. The Court reasoned:

> This Circuit has consistently held that the fiduciary duties owed to participants and beneficiaries under ERISA apply only to the administration of a plan, not to its formation, amendment, or modification. This is in recognition of the fact that ERISA "does not regulate the substantive content of welfare benefit plans." As this Circuit has previously noted, it would contravene Congress's intent for this Court to dictate the content of a welfare benefit plan. As such, this Circuit has held that "an employer unilaterally may change or abolish [a welfare benefit plan] without violating ERISA."

*Id.* at 1338 (citations omitted).

Likewise, the Fourth Circuit has also held that multi-employer welfare benefit plans may be amended without invoking fiduciary duties. In *Fagan v. Nat'l Stabilization Agreement of Sheet Metal Indus. Trust Fund*, 60 F.3d 175 (4th Cir.1995), the court held that a welfare plan amendment that forfeited benefits otherwise payable was not a fiduciary act. The court reasoned:

> It must be remembered that this appeal concerns only welfare benefits and that such benefits are explicitly exempted from vesting obligations imposed by ERISA on pension benefits. 29 U.S.C. § 1051(1). This court recognized and emphasized this distinction between vested pension benefits and unfunded contingent welfare benefits in *Sutton v. Weirton Steel Div. of Nat'l Steel Corp.*, 724 F.2d 406, 410 (4th Cir. 1983) .... Referring to the latter type benefits, the court stated that changes in such benefits by amending the plan "are

---

7. "To vest benefits is to render them forever unalterable." *Sprague v. General Motors Corp.*, 133 F.3d 388, 400 (6th Cir.1998). Thus, it follows that a forfeiture of vested benefits should draw scrutiny. Employee welfare benefit plans, however, whether single-employer or multi-employer, "are not subject to the stringent vesting, participation and funding requirements imposed by ERISA on 'employee pension benefit plans.'" *Rodriguez–Abreu v. Chase Manhattan Bank, N.A.*, 986 F.2d 580, 585 (1st Cir.1993). It is for this reason that the Supreme Court concluded that employers "are generally free under ERISA, for any reason at any time, to adopt, modify, or terminate welfare plans." *Curtiss–Wright*, 514

U.S. at 78, 115 S.Ct. 1223. Although an employer "may make an enforceable promise to provide for vesting of welfare benefits where ERISA does not," *Devlin v. Transportation Communications Int'l Union*, No. 95 Civ. 0742, 1997 WL 570512, at *4 (S.D.N.Y. Sept. 15, 1997), "an employer's commitment to vest such benefits is not to be inferred lightly; the intent to vest 'must be found in the plan documents and must be stated in clear and express language.'" *Sprague*, 133 F.3d at 400 (quoting *Wise v. El Paso Natural Gas Co.*, 986 F.2d 929, 937 (5th Cir.1993)). The Plan does not indicate, nor do Plaintiffs argue, that their welfare benefits were vested.

not to be reviewed by fiduciary standards." ... Thus, we do not apply strict fiduciary standards in determining the validity of the present forfeiture provisions .... Rather, we must determine whether the provisions comply with ERISA requirements and further the basic purpose of the plan. *Id.* at 178. Notably, the Second Circuit's Southern District of New York, noting the important vesting distinction between pension plans and welfare plans, has recently concurred that fiduciary obligations do not attach to multi-employer welfare benefit plans. *Devlin,* 1997 WL 570512, at *4, 7.

▮ In light of these developments, the Court is persuaded that the distinction between multi-employer and single-employer plans urged by Plaintiffs, and found appropriate by *Siskind* in the pension plan context, is not determinative in the context of the welfare benefit plan before it where Plaintiffs have no right to vested benefits. As more recent decisions of the Supreme Court and various circuits have stated, *"plan sponsors* are generally free under ERISA, for any reason at any time, to adopt, modify, or terminate welfare plans." *Curtiss–Wright,* 514 U.S. at 78, 115 S.Ct. 1223 (emphasis added). Therefore, the Trustees as plan sponsors were not subject to fiduciary obligations when they adopted the 1993 Amendment to the Plan. Because the Trustees did not act as fiduciaries when amending the Plan, they had no fiduciary duty to Plaintiffs with respect to that activity. "This is true even if a plan amendment appears unfair, or does not affect all participants similarly." *Bennett v. Conrail Matched Savings Plan Admin. Comm.,* Nos. CIV.A.97–4535, CIV.A.97–5017, CIV.A.97–5345, 1997 WL 700538, at *8 (E.D.Pa. Oct.30, 1997). Thus, the Trustees, as a matter of law, cannot be held liable for breach of fiduciary duty in connection with the adoption of the 1993 Amendment.

### (2) *Violation of ERISA Notice and Disclosure Requirements as Breach of Fiduciary Duty*

Plaintiffs also argue that Defendants breached a fiduciary duty by failing to give them proper notice of the 1993 Amendment and that such a failure renders the Amendment null and void. Plaintiffs note that 29 U.S.C. §§ 1022(a), (b), and § 1024(b)(1), require that participants be furnished with notice of plan modifications that result in a material reduction in covered services or benefits provided under a group health plan.[8] Plaintiffs allege that they did not receive notice of the 1993 Amendment until a 1995 Summary Plan Description ("SPD") was issued in August, 1995, well beyond the 210 day window provided by § 1024.[9] They contend that providing notice of plan modifications is a fiduciary duty and that Defendants' failure to provide them with notice constitutes a breach of that duty, justifying an invalidation of the 1993 Amendment.

"Although there is a paucity of law in this area of ERISA," *Rucker v. Pacific FM, Inc.,*

---

8. Plaintiffs claim that Defendants had 60 days to provide them with notice. Plaintiffs are correct that ERISA presently requires a plan administrator to provide participants a summary description of modification or changes that involve "a material reduction in covered services or benefits under a group health plan" within sixty days of the change. 29 U.S.C. § 1024(b)(1). However, this sixty-day notice provision was added to § 1024 by Congress in 1996, three years after the modification in question. *See* Pub.L. No. 104–191, § 101(c)(1996). Under ERISA as it stood in 1993, the administrator had until "210 days after the end of the plan year in which the change [was] adopted" to notify participants of plan modifications. 29 U.S.C. § 1024(b)(1) (West. 1986). *See Kytle v. Stewart Title Co.,* 788 F.Supp. 321 (S.D.Tex.1992) (when there is a material modification to an employee benefits plan, summary of change must be provided to participants

within 210 days after end of plan year in which change occurred).

9. Defendants do not challenge the claim that notice was not provided until August, 1995. Rather, Defendants point to the language of 29 U.S.C. § 1024(b)(1) which requires notice be furnished "not later than 210 days after the end of the plan year in which the change is adopted." Defendants claim that the 1993 Amendment, executed June 15, 1993, was not "adopted" until it went into effect on January 1, 1994, thus giving Defendants 574 days after January 1, 1994, to provide notice. The Court is not persuaded by Defendants' argument. Congress clearly did not intend to permit plan administrators to delay notice of a binding plan modification for more than two years simply because the changes adopted did not go into effect immediately.

806 F.Supp. 1453, 1457–58 (N.D.Cal.1992), several courts have concluded that a fiduciary duty may arise from the obligation to notify plan beneficiaries of the termination of coverage. *Id.* (plaintiffs proffered evidence sufficient to generate a material issue of fact with respect to whether defendants intentionally concealed termination of policy); *Anderson v. Resolution Trust Corp.,* 66 F.3d 956, 960 (8th Cir.1995) (noting in dicta that "communications to the plan participants about pension benefits ... are subject to ERISA's fiduciary standards"); *Willett v. Blue Cross & Blue Shield of Alabama,* 953 F.2d 1335, 1340 (11th Cir.1992) ("[p]roviding notice of the discontinuation or suspension of coverage is a fiduciary responsibility"); *but see Sweeney v. Kroger Co.,* 773 F.Supp. 1266, 1269 (E.D.Mo.1991) (quoting *Porto v. Armco, Inc.,* 825 F.2d 1274, 1276 (8th Cir.1987)) ("The fiduciary duty imposed by ERISA generally relates to the management of plan assets while a plan administrator's duty to disclose information to plan participants is 'another matter, dealt with separately by ERISA.' "); *LeHigh Valley Hosp. v. Rallis,* Nos. CIV.A.94–3082, CIV.A.95–3511, 1996 WL 187560, at *5 (E.D.Pa. Apr.12, 1996), *rev'd and remanded on other grounds,* 135 F.3d 765 (3d Cir.1997) ("As a procedural point, it should be noted that an administrator does not breach a fiduciary duty by failing to comply with [§ 1024], but rather breaches a non-fiduciary duty.").

■ Although it is not clear whether ERISA's disclosure provisions always invoke fiduciary responsibilities,[10] it is clear that "ERISA distinguishes between the decision to terminate a plan and the manner in which the terms of a potential termination are represented." *Center v. First Int'l Life Ins. Co.,* No. 94–11596, 1997 WL 136473, at *15 (D.Mass. Mar. 13, 1997). In that regard, a plan sponsor is duty bound not to mislead participants, and where failure to abide by ERISA's disclosure requirements involves misleading statements or intentional conceal-

ment, a fiduciary breach claim will arise. *See Varity,* 516 U.S. at 506, 116 S.Ct. 1065. As the court in *First Int'l Life Ins. Co.* noted:

> An employer has a fiduciary duty as a plan administrator not affirmatively to mislead participants. *See, e.g., Fischer v. Philadelphia Elec., Co.,* 994 F.2d 130, 135 (3d Cir.), *cert. denied,* 510 U.S. 1020, 114 S.Ct. 622, 126 L.Ed.2d 586 (1993); *Drennan v. General Motors Corp.,* 977 F.2d 246, 251 (6th Cir.1992), *cert. denied,* 508 U.S. 940, 113 S.Ct. 2416, 124 L.Ed.2d 639 (1993); *see generally* Edward E. Blintz, Fiduciary Responsibility Under ERISA: Is there Ever a Fiduciary Duty to Disclose?, 54 U. Pitt. L.Rev. 979 (1993). "Lying is inconsistent with the duty of loyalty owed by all fiduciaries and codified in section 404(a)(1) of ERISA ...." *Varity,* [516] U.S. [489], at [504], 116 S.Ct. at 1074 (quoting *Peoria Union Stock Yards Co. v. Penn Mut. Life Ins. Co.,* 698 F.2d 320, 326 (7th Cir.1983)); *see also In re Unisys Corp.,* 57 F.3d at 1261 ("[i]n the exercise of his duties, the fiduciary may not materially mislead those to whom the duties of loyalty and prudence are owed."). "Put simply, when a plan administrator speaks, it must speak truthfully." *Fischer,* 994 F.2d at 135.

*Id.* at *15; *see also Mullins v. Pfizer, Inc.,* 23 F.3d 663, 668 (2d Cir.1994) (joining the Third and Sixth Circuits in adopting the view that a plan administrator may not make affirmative material misrepresentations to plan participants about changes to an employee pension benefits plan).

■ In the one case cited by Plaintiffs for the proposition that failure to comply with ERISA disclosure provisions always invokes fiduciary liability, the court inquired into whether the defendants *intentionally* concealed information required to be disclosed by ERISA in considering whether a breach of fiduciary duty had occurred. *Rucker,* 806 F.Supp. at 1457. Plaintiffs do not suggest that Defendants' failure to notify

---

10. *Varity,* 516 U.S. at 506, 116 S.Ct. 1065 ("we need not reach the question of whether ERISA fiduciaries have any fiduciary duty to disclose truthful information on their own initiative, or in response to employee inquiries"). *See also* Steven Davi, To Tell the Truth: An Analysis of Fiduciary Disclosure Duties and Employee Standing to Assert Claims Under ERISA, 10 St. Johns L.Rev. 625, 642 & n.94 (noting that the Supreme Court has not defined the scope of an employer's fiduciary duty to disclose under ERISA).

Plaintiffs of the 1993 Amendment in a timely manner was intentional. The Court is unable to find a case imposing fiduciary liability on a welfare benefits plan administrator solely because it failed to comply with ERISA's notice requirements where there was not some evidence of intentional concealment or affirmative misstatement. *See, e.g., Payonk v. HMW Industries, Inc.*, 883 F.2d 221, 229 (3d Cir.1989) ("Thus, we hold that an employer's lawful termination decision, absent affirmative misrepresentations designed to mislead plan participants, is not governed by ERISA's standards of fiduciary duties."); *Sweeney*, 773 F.Supp. at 1269 (quoting *Porto*, 825 F.2d at 1276) ("The fiduciary duty imposed by ERISA generally relates to the management of plan assets while a plan administrator's duty to disclose information to plan participants is 'another matter, dealt with separately by ERISA.'"); *Anderson*, 66 F.3d at 960 ("ERISA fiduciaries are prohibited from materially misleading plan participants, and fiduciaries sometimes have a duty to disclose information."). As such, the Court declines to impose fiduciary liability here for a procedural violation regarding non-vested welfare benefits that caused little, if any, substantive harm to Plaintiffs and that the record suggests is the result of nothing more than plain oversight.

More importantly, even if Defendants were under a strict fiduciary obligation to comply with ERISA's notice provisions and their actions constituted a breach of that obligation. Defendants failure to comply with ERISA's disclosure provisions is insufficient to either render the 1993 Amendment invalid or entitle Plaintiffs to other equitable relief. Generally, substantive remedies are not available under § 1132(a) for violations of ERISA's procedural requirements without a showing of "some significant reliance on, or possible prejudice flowing from these reporting and disclosure violations." *United Paperworkers Int'l Union, Local 14, AFL–CIO–CLC v. Int'l Paper Co.*, 777 F.Supp. 1010, 1019 (D.Me.1991) (and cases cited therein); *accord Kreutzer v. A.O. Smith Corp.*, 951 F.2d 739, 743 (7th Cir.1991) ("Most courts that have considered the issue have held that the employer must have acted in bad faith, actively concealed the benefit plan, or other-

wise prejudiced their employees by inducing reliance on a faulty plan summary before recovery for procedural violations is warranted."); *Ackerman v. Warnaco, Inc.*, 55 F.3d 117, 124 (3d Cir.1995) ("We have repeatedly held that under ordinary circumstances defects in fulfilling the reporting and disclosure requirements of ERISA do not give rise to a substantive remedy other than that provided for in section 502(a)(1)(A) of that Act."); *Berger v. Edgewater Steel Co.*, 911 F.2d 911, 921 (3d Cir.1990) (procedural violations do not warrant substantive remedies where there is no evidence of active concealment or administering severance policy in unfair manner). In *United Paperworkers*, 777 F.Supp. at 1021, the court held that the plaintiffs were not entitled to injunctive relief for breach of fiduciary duty arising out of the defendants' failure to provide a SPD, to file annual reports, and to maintain a claims procedure, where the plaintiffs failed to show how the procedural violations prejudiced them.

The prejudice requirement for equitable relief applies equally to notice violations in connection with welfare plan amendments. "[A]n amendment to a welfare benefit plan is valid despite a beneficiary's lack of personal notice, unless the beneficiary can show active concealment of the amendment . . . or 'some significant reliance upon, or possible prejudice flowing from' the lack of notice." *Godwin v. Sun Life Assurance Co. of Canada*, 980 F.2d 323, 328 (5th Cir.1992) (quoting *Govoni v. Bricklayers, Masons and Plasterers Int'l Local No. 5 Pension Fund*, 732 F.2d 250, 252 (1st Cir.1984)); *see also Whitfield v. Torch Operating Co.*, 935 F.Supp. 822, 830–31 (E.D.La.1996) (same).

Plaintiffs offer no evidence of active concealment, significant reliance, or prejudice flowing from the lack of notice. Although Boucher did not discover that his health insurance had been canceled until October, 1994, when Blue Cross/Blue Shield refused to pay a hospital bill for forty-two dollars, he secured an alternate source of insurance coverage effective ten days thereafter. Boucher Dep. at 3–8 & Ex. 1. While Boucher did rely on the lack of notice, in the sense that he

believed that the Fund was continuing to pay his premiums, the fact that he suffered no significant out-of-pocket losses that would not have been incurred had he immediately secured an alternate source of insurance on January 1, 1994, persuades the Court that his reliance was not significant enough to justify invalidating the 1993 Amendment or providing other substantive equitable relief. *See Govoni*, 732 F.2d at 252–53; *Ackerman*, 55 F.3d at 124 ("even if as the result of [the defendant's] negligence a copy of the 1991 Handbook was not available for plaintiffs' review . . . and the employees did not receive written notice of the termination of their severance benefits within 210 days of the end of the plan year in which this change was adopted, we are unable to conclude that ERISA provides the [equitable] remedy that plaintiffs seek"). In other words, the Court is persuaded that the "extraordinary circumstances" required to justify a substantive remedy for a procedural violation are not present here. *See Ackerman*, 55 F.3d at 124. Likewise, Plaintiff Small has not offered evidence that he suffered prejudice or significantly relied on the lack of notice. As such, the Court is persuaded that Plaintiffs are not entitled to injunctive relief for Defendants' failure to provide timely notice of the 1993 Amendment.[11]

### (3) *Does the 1993 Amendment Further the Basic Purpose of the Plan?*

 Although strict fiduciary standards do not apply in determining the validity of the 1993 Amendment, the Court must determine whether the 1993 Amendment complies with ERISA requirements and furthers the basic purpose of the Plan. A trustee may "retain the unfettered right to alter its promises, but to do so it must follow the formal procedures set forth in the plan." *Inter–Modal Rail Employees Assoc. v. Atchison, Topeka and Santa Fe Railway Co.*, 520 U.S. 510, 117 S.Ct. 1513, 1516, 137 L.Ed.2d 763 (1997) (citing 29 U.S.C. § 1102(b)(3)); *see also Curtiss–Wright*, 514 U.S. at 78, 115 S.Ct. 1223 ("Accordingly, that *Curtiss–Wright* amended its plan to deprive respon-

dents of health benefits is not a cognizable complaint under ERISA; the only cognizable claim is that the company did not do so in a permissible manner."); *Fagan*, 60 F.3d at 178.

ERISA requires that every employee benefit plan "provide a procedure for amending such plan, and for identifying the persons who have authority to amend the plan." 29 U.S.C. § 1102(b)(3). The Plan provides:

> The provisions of this AGREEMENT AND DECLARATION OF TRUST may be amended at any time either by a resolution in writing duly adopted by three-fourths (3/4) vote of all the Trustees present and voting at a meeting of the Trustees validly called and held, or without a meeting if all of the Trustees sign written consents setting forth the amendment(s), provided that each amendment shall be annexed hereto. However, no amendment shall alter the general purpose of this AGREEMENT and DECLARATION OF TRUST to provide for the payment of health and welfare benefits for Employees represented by U.A. Local 783. Any amendment may have retroactive effect if deemed necessary by the Trustees. This AGREEMENT and DECLARATION OF TRUST may be terminated by an instrument in writing executed by all the Trustees when there are no longer in force and effect any collective bargaining agreements between any Employers and the Union requiring contributions to the Fund.

Plan Art. VI, § 1.

Plaintiffs do not challenge the sufficiency of this amendment provision under 29 U.S.C. § 1102(b)(3), nor do they allege that the Trustees failed to comply with its procedures. The question for the Court is whether the 1993 Amendment is consistent with the amendment procedure's requirement that "no amendment shall alter the general purpose of this trust."

 The general purpose of the plan is "to provide for the payment of health and welfare benefits for *Employees represented*

---

**11.** For the same reasons, Plaintiffs are not entitled to equitable relief for the notice and disclosure violations alleged in subsequent counts.

*by U.A. Local 783.*" Plan Art. VI, § 1 (emphasis added). The 1993 Amendment in no way affects "employees represented by" the Union. Rather, the Amendment affects those who are no longer represented by the Union. As such, the Court is persuaded that the 1993 Amendment does not alter the general purpose of the Plan.

 Plaintiffs contend that the 1993 Amendment is inconsistent with the terms of the Plan which permit retirees to continue in the health benefits program, regardless of Union membership, until their allocation accounts are depleted. Although the Plan did permit participants for whom employers were no longer required to make contributions to the Fund to continue to participate in the benefits program until their allocation accounts were "depleted," the Plan also permitted forfeiture of allocation accounts when participants leave the Union. Plan Art. II, §§ 4, 5. The Plan provided, "[a]ll amounts in the allocation account of any Participant who is not a member of the Union and who has had no contribution made or required to be made to the Fund on his behalf for a twelve consecutive month period shall be transferred to the administrative account." Plan Art. II, § 4. This provision gives the Trustees the power, if not a mandate, to forfeit the accounts of participants who leave the Union. Although section 4 and section 5 (which permits participants who retire from the union to continue in the program) appear at first glance to be incompatible, the Court is persuaded that they can be read consistently with one another.[12] While the 1993 Amendment may render section 5 meaningless, it is clearly permissible under the specific terms, and consistent with the general purpose, of section 4.

 Finally, Plaintiffs argue that the 1993 Amendment should be invalidated because the 1990 SPD failed to disclose that the

Plan was subject to amendment and that the Trustees retained the power to forfeit accounts of those participants who left the Union. Although *Varity*, 516 U.S. at 497–504, 116 S.Ct. 1065, counsels that an employer acts in a fiduciary capacity when making misrepresentations to employees about their benefit plans, failure to disclose the fact that the plan was subject to amendment in the SPD does not subject the Trustees to fiduciary liability. *Sprague*, 133 F.3d at 405–06 ("there can be no fiduciary duty to disclose the possibility of a future change in benefits"). Under ERISA's terms, a plan sponsor "is not required to disclose in its summary plan descriptions that the plan was subject to amendment or termination." *Id.* (citing 29 U.S.C. § 1022(b); 29 C.F.R. § 2520.102–3). As the Sixth Circuit has noted, "[i]t would be strange indeed if ERISA's fiduciary standards could be used to imply a duty to disclose information that ERISA's detailed disclosure provisions do not require to be disclosed." *Id.*

As for the fact that the 1990 SPD did not contain the Plan's forfeiture provision, Plaintiffs might have had a cognizable claim if they relied on the SPD and the Trustees forfeited their allocation accounts without amending the Plan. *See Bachelder v. Communications Satellite Corp.*, 837 F.2d 519, 522–23 (1st Cir.1988) (SPD will not govern unless the employee shows "significant reliance" on its terms). Here, however, Defendants properly amended the Plan document and Plaintiffs have failed to demonstrate significant reliance on the 1990 SPD. The only evidence of reliance offered by Plaintiffs is that Boucher did not secure an alternative source of health coverage until October, 1994, and that he continued to use his Blue Cross/Blue Shield card after January 1, 1994, with the expectation that it would be honored. Pls.' Reply to Defs.' Resp. to Pls.' Mot. Summ. J. at 5. Neither of these facts, without

---

**12.** In the Courts' view, these provisions can be reconciled (although neither party addresses what seems the most appropriate reading). Section 4, which mandates forfeiture, applies to participants who have both (1) left the Union and (2) had no contributions made on their behalf for twelve months. Section 5, which permits continuation until accounts are depleted, applies to participants whose employers are no longer re-

quired to make contributions on their behalf. Read together, these provisions entitle a participant whose employer is no longer making contributions on his behalf (for whatever reason) to continue in the program until his account is depleted. However, when an individual in this class of participants terminates his membership in the Union, his account is forfeited.

more, suggest that Boucher specifically relied on the terms of the SPD.[13] As the First Circuit has noted, "[a] mere expectation is not enough" to satisfy the reliance requirement. *Bachelder*, 837 F.2d at 523 n. 6.

### (4) *Plan Mismanagement*

In light of the Court's holding that the adoption of the 1993 Amendment was a valid exercise of the Trustees' power under the Plan, Plaintiffs lack standing to assert their claim of general mismanagement of the Trust.[14] To have standing to bring an action for breach of fiduciary duty under ERISA, Plaintiffs must qualify as "participants." *Crawford v. Lamantia*, 34 F.3d 28, 31 (1st Cir.1994). ERISA defines the term participant to include:

> any employee or former employee of an employer, or any member or former member of an employee organization, who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer or members of such organization, or whose beneficiaries may be eligible to receive any such benefit.

29 U.S.C. § 1002(7). The First Circuit has recently observed:

> In *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 117, 109 S.Ct. 948, 957–58, 103 L.Ed.2d 80 (1989), the Supreme Court

interpreted this provision as providing for two distinct categories of ERISA participants: 1) "employees in, or reasonably expected to be in, currently covered employment;" or 2) former employees who have a "reasonable expectation of returning to covered employment" and/or a "colorable claim" to vested benefits. *Id.* at 117, 109 S.Ct. at 958 (internal quotations omitted). *Crawford*, 34 F.3d at 32.

Plaintiffs are not currently members of an "employee organization." Therefore they do not have standing as participants under the first prong of the *Firestone* test, *Id.* ("although plaintiff may have had standing as a current employee when he brought this action, by the time he filed his amended complaint, he lost this standing on account of having terminated his employment ... and having collected all vested benefits then due him ...."); *Raymond v. Mobil Oil Corp.*, 983 F.2d 1528, 1534 (10th Cir.1993) ("... it defies common sense to conclude that employees who retired some seven years ago are anything other than 'former employees' ").

As for the second prong, Plaintiffs do not argue that they have either a reasonable expectation of returning to covered employment or a colorable claim to vested benefits.[15] Rather, Plaintiffs appear to concede that they do not have participant standing but

---

**13.** Plaintiffs cite generally to the Deposition of Raymond Boucher and accompanying exhibits. The Court could find nothing in the material cited that suggests Boucher even read the 1990 SPD.

**14.** Plaintiffs only evidence of mismanagement is a two and a half page review of the Plan's financial records conducted by Plaintiffs' expert Kay L. Stonemetz which "ascertained several areas of improper administration." Defs.' Ex. G. Stonemetz cited three types of irregularities, not including the alleged account forfeitures, but she could not quantify the effect of the alleged improprieties and she admitted that the report was "not audited, reviewed or compiled and accordingly I do not express an opinion or any other form of assurance on it." *Id.*

**15.** As discussed above, Plaintiffs do not have a colorable claim to vested benefits. As a welfare benefit plan, the plan is not subject to ERISA's vesting requirements and Plaintiffs have offered no evidence that their benefits were vested. It is

also clear that neither Boucher nor Small had a reasonable expectation of returning to covered employment (in this case, renewing their Union membership). Boucher Dep. at 2 ("Q: Since you left, have you ever had an occasion where you've filed an application to rejoin the union?; A: No. I had no desire to rejoin the union."); Small Dep. at 4. Moreover, had they rejoined the Union after June, 1994, they would not be returning to "covered employment" as the Fund discontinued its health care benefits program. As discussed above, the 1993 Amendment to the Plan was a valid exercise of the Trustees power under the Plan. As of January 1, 1994, Plaintiffs were no longer entitled to any welfare benefits. As such, they are not "participants" and therefore do not have standing. *See Firestone*, 489 U.S. at 118, 109 S.Ct. 948 (quoting *Saladino v. I.L.G.W.U. National Retirement Fund*, 754 F.2d 473, 476 (2d Cir.1985)) (" 'A former employee who has neither a reasonable expectation of returning to covered employment nor a colorable claim to vested benefits ... simply does not fit within the [phrase] "may become eligible." ' ").

contend that the Supreme Court's decision in *Varity* extended standing to "former plan participants." Contrary to Plaintiffs' contention *Varity* did not "hold that former plan participants have standing to seek redress for fiduciary breaches." First of all, *Varity* did not even address the issue of standing. Second, the plaintiffs in that case were not "former participants" as Plaintiffs allege. Rather, the parties in *Varity* agreed that the plaintiffs "are plan 'participants' or 'beneficiaries.'" *Varity*, 116 S.Ct. at 1075–76.

■ A non-"participant" may have standing to bring an ERISA claim where, "but for" his employer's wrongful conduct he would have been a "participant." *Vartanian v. Monsanto Co.*, 14 F.3d 697, 702 (1st Cir. 1994). Such is not the case here. Plaintiffs' lack of participant status is not the result of any wrongful conduct. As discussed above, the Trustees' adoption of the 1993 Amendment, effectively stripping Plaintiffs of their "participant" status, did not breach any fiduciary duty.

Plaintiffs' attempt to clear the standing hurdle by alleging that general mismanagement of the Fund, constituting a breach of fiduciary duty, resulted in the adoption of the 1993 Amendment, which stripped Plaintiffs of their participant status. Plaintiffs suggest that the mismanagement rendered the Fund financially unstable which in turn forced the Trustees to forfeit Plaintiffs' allocation accounts. Plaintiffs' argument fails on several grounds. First, Plaintiffs offer no evidence suggesting that in the absence of the alleged mismanagement Defendants would have maintained Plaintiffs' allocation accounts indefinitely.[16] More importantly, Plaintiffs' approach stretches the limited holding of *Vartanian*, a case involving vested

pension benefits, too far. In *Vartanian*, the Court concluded:

> [w]e hold that where an employee alleges a decision to retire based on alleged misrepresentations by his employer amounting to a breach of fiduciary duty, and the true facts are not available to the employee until after the employee has received all his vested benefits under a plan; and further, where the employee shows that in the absence of the employer's breach of fiduciary duty he would have been entitled to greater benefits than those which he received, then his receipt of payment cannot be used to deprive him of 'participant' status and hence, standing to sue under ERISA.

*Vartanian*, 14 F.3d at 703. The First Circuit has since limited the *Vartanian* holding to cases where, unlike here, the plaintiffs can establish that they were former employees with a colorable claim to vested benefits. *Crawford*, 34 F.3d at 33 n. 7. In light of *Crawford* the Court declines to extend *Vartanian*'s holding to situations involving non-vested welfare benefits where the alleged breach of fiduciary duty resulted in no redressable harm to Plaintiffs,[17] and where the Defendants had at all times a legal right to terminate Plaintiffs' accounts through proper plan amendment.

Therefore, for the reasons stated above, Plaintiffs' Motion for Summary Judgment on Count I is denied and Defendants' Motion for Summary Judgment on Count I is granted.

### Counts II & III

■ In Counts II and III, Plaintiffs allege various ERISA notice and disclosure violations. Count II essentially restates the argument offered in Count I that Defendants failed to provide Plaintiffs with timely notice of the 1993 Amendment. In Count III,

---

**16.** Richard Williams' testimony suggests that the accounts were forfeited because Blue Cross/Blue Shield repeatedly increased its premiums while employer contributions remained constant, forcing Union members to pay a prohibitively higher share of their premium out of pocket. Williams Dep. at 14–15; 47–48. The Fund intended to use the forfeited allocation accounts to offset the increased premiums. While it is plausible that the alleged bookkeeping errors resulted in the Trustees believing that the Fund had fewer assets than it in fact had, Plaintiffs offer nothing to

suggest that the Trustees would have done anything differently had they known that the Plan's equity was understated.

**17.** Although Plaintiffs need not allege specific injury to gain standing in an ERISA suit, the Court notes that neither Plaintiffs nor the expert upon whose opinion they rely allege that the accounts of Boucher or Small contained any irregularities or were subject to mismanagement. Stonemetz Dep. at 193–197.

Plaintiffs allege that Defendants failed to notify the Secretary of Labor of the 1993 Amendment in violation of 29 U.S.C. § 1023(b)(1). Both parties seek summary judgment as to these counts.[18] The Court finds that Defendants violated ERISA by failing to provide Plaintiffs with timely notice of the 1993 Amendment and by failing to notify the Department of Labor of the 1993 Amendment in the Fund's annual reports.[19] Judgment is hereby entered for Plaintiffs to the extent they seek declaratory relief to this effect. Plaintiffs also seek equitable relief, specifically invalidation of the 1993 Amendment, for Defendants' alleged disclosure violations. As discussed with regard to Count I, Plaintiffs are not entitled to substantive remedies for ERISA notice and disclosure violations absent a showing of prejudice, intentional concealment, or significant reliance. Plaintiffs have failed to make such a showing. Therefore, the Court enters judgment for Defendants on Counts II and III to the extent any substantive equitable relief is sought.

### Count IV

In Count IV Plaintiffs allege that IPI failed to provide Plaintiffs with notice of their right to elect continuing health coverage under the Consolidated Omnibus Budget Reconciliation Act ("COBRA"), 29 U.S.C. § 1161 et seq. COBRA requires plan administrators to provide continued health insurance coverage to covered employees and their qualified beneficiaries and to notify them of their right to elect such coverage upon the occurrence of a "qualifying event." 29 U.S.C. § 1161. The parties agree that the

forfeiture of non-Union participants' allocation accounts effected on January 1, 1994, pursuant to the 1993 Amendment is a "qualifying event." Defendants have moved for summary judgment as to Plaintiff Small and for partial summary judgment as to Plaintiff Boucher. In their response to Defendants' motion, Plaintiffs concede that Plaintiff Small was not participating in the Plan's group health insurance program at the time of the adoption of the 1993 Amendment and that he was therefore not entitled to COBRA notice when his participation in the Plan was terminated. Therefore, the Court grants Defendants' motion as to Plaintiff Small.

Defendants claim that they provided appropriate notice to Boucher but concede that a factual dispute exists on this issue.[20] Defendants, however, move for partial summary judgment to the extent that Boucher claims "damages" between January 1, 1994, and June 30, 1994, when the Fund ceased to provide group health insurance to all participants.[21] The quantum of damages for failure to comply with COBRA notification obligations was stated in Van Hoove v. Mid–America Building Maintenance, Inc., 841 F.Supp. 1523, 1536 (D.Kan.1993):

> The purpose of the civil enforcement provisions of COBRA is, above all, to put plaintiffs in the same position they would have been in but for the violation. Phillips v. Riverside, Inc., 796 F.Supp. 403, 411 (E.D.Ark.1992); Gaskell v. Harvard Co–op Soc., 762 F.Supp. 1539, 1543 (D.Mass. 1991), vacated on other grounds, 3 F.3d 495 (1st Cir.1993). It is therefore appropriate to compensate plaintiff for her loss-

---

18. Although Plaintiffs do not request summary judgment as to Count III in their motion for summary judgment, they argue in their response to Defendants' motion on Count III that they are entitled to summary judgment. The Court, therefore, treats Plaintiffs' response as a motion for summary judgment on Count III.

19. Defendants admit that they failed to report the 1993 Amendment, which the Court finds to be a "significant change in the plan" under 29 U.S.C. § 1023(b)(1).

20. The Court therefore assumes for the purpose of this motion that appropriate COBRA notice was not provided to Plaintiff Boucher.

21. The Court assumes that Defendants do not move for total summary judgment because Plaintiffs seek a declaratory judgment which cannot be resolved on summary judgment due to the material issue of disputed fact that exists with regard to Count IV. It is unclear what other relief Plaintiffs seek in connection with Count IV. As discussed above, Plaintiffs are not entitled to an invalidation of the 1993 Amendment for COBRA notice violations. See DiSabatino v. DiSabatino Brothers, Inc., 894 F.Supp. 810, 815 (D.Del.1995) (noting that courts should be reluctant to award extraordinary remedies that put the plaintiff in a better position than he would have been in had the employer complied with ERISA's notice requirements, including those added by COBRA).

es. However, plaintiff's medical bills alone are not the proper measure of damages. The court must reduce the amount by any deductibles or co-payments, as well as the premium that [plaintiff] would have had to pay had she elected continuation coverage. *Phillips,* 796 F.Supp. at 411.

*See also DiSabatino,* 894 F.Supp. at 814; *Ward v. Bethenergy Mines, Inc.,* 851 F.Supp. 235, 240 (S.D.W.Va.1994); *Rinaldo v. Grand Union Co.,* No. CV–89–3850, 1995 WL 116418, at *3 (E.D.N.Y. Mar. 8, 1995). An employer is only required to provide continuing coverage under COBRA until "[t]he date on which the employer ceases to provide any group health plan to any employee," 29 U.S.C. § 1161. It is undisputed that the Fund terminated its group health plan on June 30, 1994. Therefore, Defendants' COBRA obligations ceased as of that date.

Defendants argue that Boucher suffered no losses as a result of his lack of COBRA notice between January 1, 1994, and June 30, 1994, and that Plaintiffs are therefore not entitled to damages. Plaintiffs do not contest Defendants' claim[22] and offer no evidence that Boucher incurred medical expenses during this time period that would not have been incurred had Defendants complied with COBRA.[23] Therefore, Boucher is not entitled to recover damages for Defendants' violation of COBRA's notice requirement. *See, e.g., Rinaldo,* 1995 WL 116418 at * 1.

■ 29 U.S.C. § 1132 permits the Court to assess statutory penalties of up to $100 a day against a plan administrator for failure to comply with COBRA notice requirements.[24] "The imposition of penalties is committed, by statute, to the discretion of the trial court ...." *Rodriguez–Abreu,* 986 F.2d at 588. The Court, in its discretion, declines to impose penalties for Defendants'

failure to provide COBRA notice to Boucher. Boucher has failed to show that he suffered any harm or prejudice due to his lack of notice. Nor does he suggest that his failure to receive notice was intentional or demonstrates bad faith. "Although prejudice and bad faith are not prerequisites for imposition of penalties, these are factors which ... [are] properly considered ...." *Id.* The availability of sanctions under § 1132 serves to deter plan administrators' "potential malfeasance." *Mlsna v. Unitel Communications, Inc.,* 41 F.3d 1124, 1129 (7th Cir.1994). Penalties would have little deterrent effect here as the Fund no longer provides group health coverage to participants. The fact that Plaintiffs have failed to specifically request penalties for COBRA violations also is a factor in the Court's decision not to award penalties.

Although Defendants' motion states that Defendants seek "partial" summary judgment as to Boucher, the Court enters judgment for Defendants on Count IV in its entirety. As noted above, Plaintiffs have failed to demonstrate the extraordinary circumstances that would justify equitable relief.[25] Plaintiff Boucher has suffered no harm and is therefore not entitled to damages. In addition, the Court has declined to impose penalties. Therefore, Plaintiffs have no available substantive remedy for Defendants' alleged technical COBRA violation. Judgment is therefore entered for Defendants to the extent equitable remedies are sought. *Sheppard v. Diversified Foods and Seasonings, Inc.,* No. CIV.A.95–2235, 1996 WL 54440, at *3 (E.D.La. Feb.8, 1996) ("The absence of damages entitles the defendants to summary judgment despite the allegations of a technical statutory violation.... This is especially true in the context of COBRA since '[t]he purpose of the civil enforcement provisions of COBRA is, above all, to put

---

**22.** Rather, Plaintiffs argue that the factual dispute regarding whether notice was provided should preclude summary judgment. However, as noted above, the Court assumes for the purposes of this motion that Boucher did not receive notice.

**23.** Even if Plaintiffs were entitled to COBRA notice after June 30, 1994, as discussed above, the only damage allegedly suffered by Boucher after this date amounts to $42.00.

**24.** Plaintiffs do not specifically request penalties for Defendants' alleged violation of § 1161 in their Amended Complaint (although they do request statutory penalties for Defendants' alleged failure to respond to requests for information unrelated to COBRA).

**25.** The only equitable relief specifically requested by Plaintiffs in their Amended Complaint is an invalidation of the 1993 Amendment, removal of the Trustees, and an accounting.

plaintiffs in the same position they would have been in but for the violation.'" (citations omitted)).

■ As for Plaintiffs' demand for a declaratory judgment, the Court, exercising its discretion to do so, dismisses this claim in light of the lack of an available remedy. "The Declaratory Judgment Act is 'an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant'; courts have broad discretion to decline to enter a declaratory judgment." *De-Novellis v. Shalala*, 124 F.3d 298, 313–14 (1st Cir.1997) (quoting *Wilton v. Seven Falls Co.*, 515 U.S. 277, 287, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995)). Where there is no substantive relief available that would remedy a harm allegedly suffered, the Court may, in its discretion, dismiss an action for a declaratory judgment before trial. *Id.* The First Circuit recently discussed a similar situation involving a request for a declaratory judgment in a Title VII discrimination suit:

> The court faced the possibility of conducting a trial ... assessing arguments and counter-arguments as to what people intended by certain statements or actions, with no opportunity to award any relief to DeNovellis that would remedy the harm he allegedly suffered. After trial, the court might possibly have the authority to enter a declaration that some or all of the defendant's now-terminated employment actions were discriminatory. In the circumstances of this case, the district court's decision—prior to trial—to refrain from such a fruitless endeavor was within its discretionary power.

*Id.* "In the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration." *Wilton*, 515 U.S. at 288, 115 S.Ct. 2137. Considerations of practicality and wise judicial administration counsel against conducting a trial in order to make determinations regarding alleged procedural violations of ERISA solely for the purpose of entering a declaratory judgment that will neither remedy any harm suffered nor entitle Plaintiffs to any substan-

tive relief. Therefore, Plaintiffs' claim for a declaratory judgment is dismissed.

## Count V

In Count V, Plaintiffs allege that the Fund is in violation of the Labor Management Relations Act's requirement that multi-employer health and welfare funds have equal number of management and labor trustees. 29 U.S.C. § 186(c)(5)(B) (LMRA § 302(c)(5)(B)). Plaintiffs allege that the imbalance between Union Trustees and management Trustees has led to undue influence of the Union Trustees in managing the Fund. Plaintiffs seek relief pursuant to LMRA § 302(e) which grants the Court jurisdiction "to restrain violations of this section." In their claim for relief Plaintiffs ask the Court to remove the current Trustees. The Court presumes that Plaintiffs also seek equitable relief that would remedy the current imbalance.

■ Section 302(e) does not authorize the Court to award injunctive relief for a Fund's failure to appoint an equal number of union and management trustees. In *Local 144 Nursing Home Pension Fund v. Demisay*, 508 U.S. 581, 587–88, 113 S.Ct. 2252, 124 L.Ed.2d 522 (1993), the Supreme Court unequivocally stated, "[w]e hold today that § 302(e) does not provide authority for a federal court to issue injunctions against a trust fund or its trustees requiring the trust funds to be administered in the manner described in § 302(c)(5)." Plaintiffs rely on *Associated Contractors of Essex County, Inc. v. Laborers Int'l Union of North America*, 559 F.2d 222 (3d Cir.1977). This case has been abrogated by *Demisay*. Therefore, judgment is entered for Defendants to the extent injunctive relief is sought

As Plaintiffs note, a dispute of material fact regarding the voting practices of the Trustees remains. However, in light of the fact that the Court is powerless to provide Plaintiffs with any relief should they prove their case regarding Trustee imbalance resulting in undue influence, the Court dismisses Plaintiffs' claim for declaratory relief.

## Count VI

In Count VI, Plaintiffs allege that Defendants failed to provide certain Plan documents on request and ask the Court to assess penalties of up to $100 per day of delay pursuant to § 1132(c)(1). Plaintiffs allege that the documents requested were, in sum total, 14,867 days late and suggest that a penalty of $1,486,700 is "appropriate."

The record indicates that the first request for documents was made by Plaintiffs' attorney Marcia Cleveland to Diane Klobukowski, vice president/general manager of IPI, on February 18, 1995. Cleveland, on behalf of Boucher, requested the Plan in effect in 1991, all amendments to the plan after 1991, all SPD's after 1990, summaries of annual reports for the years 1991 through 1994, and statements of Boucher's allocation account from April 1993 to the present. Pls.' Ex. I. The requested documents were forwarded by Klobukowski to IPI's attorney, David McCarry, who made them available to Cleveland within 30 days of the request.[26] On June 8, 1995, Cleveland directed a document request to McCarry noting, "it is apparent that I need some additional documents, before we can discuss Mr. Boucher's rights under ERISA." Pls.' Ex. I. Cleveland requested all of the Union's collective bargaining agreements since 1990, annual reports for 1990 through the present, and rules promulgated by the Board of Trustees under Article III of the Plan. *Id.* Plaintiffs allege that some of these documents were never provided and others were not furnished until the following year. The bulk of Plaintiffs' claim for penalties arises from the alleged failure to respond to the June 8, 1995, request.

Defendants argue that IPI was not obligated to respond to Plaintiffs' June 8, 1995, request because it was directed to IPI's attorney rather than to IPI. Defendants claim that courts have generally refused to assess penalties where the requests of information were not submitted to the plan administrator. Defendants' argument would be more persuasive but for the fact that Plaintiffs addressed their subsequent requests to McCarry only after McCarry responded on IPI's behalf. The record suggests that McCarry held himself out as an agent of IPI and that Plaintiffs' reliance on him to provide documents was reasonable under the circumstances. However, the Court need not resolve whether McCarry's alleged failure to respond to Plaintiffs' requests properly subjects IPI to liability under § 1132 because the Court declines to impose penalties on other grounds.[27]

■ First of all, as more thoroughly discussed above, Plaintiffs lack standing to

---

**26.** Plaintiffs claim that four of the seven documents requested were two days late. To the extent this claim has merit, the Court declines to impose a penalty for such a minor and harmless delay. Plaintiffs also claim that McCarry failed to provide individual account statements for Boucher and Small for the years 1994 through 1997 and a Plan amendment adopted July 1, 1997. On January 1, 1994, the accounts of Boucher and Small were forfeited. The Court will not impose penalties for failure to provide account statements for accounts that no longer existed. As for the requested amendment, it was adopted six months after the request for "all amendments to the Plan after February 1, 1991 *up to the present.*" Under the circumstances, Defendants were under no obligation to provide this document.

**27.** Defendants rely on *Jones v. UOP,* 16 F.3d 141, 144–45 (7th Cir.1994), in which the court refused to impose statutory penalties where document requests were not addressed to the plan administrator. *Jones,* however, involved the question of whether penalties could be imposed on the party to whom the requests were sent, in that case the plan sponsor. Here, the issue is whether penalties can be imposed on the plan administrator when the request is sent elsewhere. The First Circuit's decision in *Law v. Ernst & Young,* 956 F.2d 364 (1st Cir.1992) is also unhelpful here. In *Law,* the court held that where an entity of which the administrator is part in effect holds itself out as the plan administrator by officially disseminating such information, that entity may be subject to § 1132 penalties. The court concluded that "[i]f, to all appearances, Arthur Young acted as the plan administrator in respect to dissemination of information concerning plan benefits, it may properly be treated as such for the purposes of the liability provided under § 1132(c)." *Id.* at 373. *Law,* like *Jones,* involved the liability of one who holds himself out as an administrator, not the liability of the actual administrator for the actions of another. *Law* counsels that an entity not named administrator in the Plan documents may be held liable if it controls the dissemination of plan information. Under *Law,* McCarry could be held liable for penalties even though he is not the named plan administrator. As McCarry is not a party, however, *Law* does not apply.

bring suit for the violations of § 1132 alleged here. Plaintiffs have neither a reasonable expectation of returning to covered employment nor a colorable claim to vested benefits, nor did they when the requests were made. As such, they are not plan "participants" entitled to bring suit under 29 U.S.C. § 1132(a). *Winchester v. Pension Committee of Michael Reese Health Plan,* 942 F.2d 1190, 1192–93 (7th Cir.1991) (holding that a former employee who had already received vested benefits under a lump sum benefits payment and who requested documents three years after accepting benefits, was not a participant where employee did not have a reasonable expectation of returning to covered employment); *see also Nugent v. Jesuit High School of New Orleans,* 625 F.2d 1285, 1287–89 (5th Cir.1980) (former, non-vested employee is not a participant).

■ The Court is further disinclined to order penalties because the June 8, 1995, document request was made in the context of impending litigation a year and a half after Plaintiffs' allocation accounts were forfeited. Plaintiffs' lawyer Cleveland and IPI's lawyer McCarry were apparently engaged in settlement negotiations and the document requests were made in the context of these negotiations. "Congress' purpose in enacting the ERISA disclosure provisions was to ensure that 'the individual participant knows exactly where he stands with respect to the plan.'" *Firestone,* 489 U.S. at 118, 109 S.Ct. 948 (quoting H.R.Rep. No. 93–533, p.11 (1973), reprinted in 1978 U.S.C.C.A.N. 4649). By June 8, 1995, Plaintiffs had enough information to know precisely where they stood with respect to the Plan. IPI had complied with Plaintiffs' request for multiple Plan documents in a timely manner. Subsequent requests were made, not to inform Plaintiffs of their standing, but to improve Plaintiffs' bargaining position in the context of settlement negotiations. In essence, Plaintiffs' attorney's requests for virtually every document related to the Plan were in the nature of litigation discovery requests.

There is little doubt that the request for extraordinary penalties here arises not from any particular harm or prejudice suffered by Mr. Boucher or Mr. Small related to the alleged failure to provide every document requested (for Plaintiffs do not allege any specific harm) but from the apparent hostility between the parties that permeates their pleadings and that was displayed before the Court at oral argument. Whatever the source of this animosity, under the circumstances the Court declines to penalize IPI for the alleged malfeasance of its attorney. There is no evidence of bad faith or intentional delay on the part of IPI. Nor have Plaintiffs shown that their rights were prejudiced by the delay. *See Rodriguez–Abreu,* 986 F.2d at 588–89. Therefore, the Court declines to impose penalties, denies Plaintiffs' motion and grants Defendants' motion in this regard. Although a factual dispute remains regarding the extent of Defendants' compliance with Plaintiffs' document requests, the Court dismisses Plaintiffs' claim for a declaratory judgment in light of the Court's decision not to assess penalties and the lack of other available remedies.

## CONCLUSION

Defendants' Motion for Summary Judgment on Count I is GRANTED in its entirety. Defendants' Motion for Summary Judgment on Counts II and III is GRANTED insofar as Plaintiffs seek substantive equitable relief and DENIED as to the claim for a declaratory judgment. Defendants' Motion for Summary Judgment on Counts IV, V, and VI is GRANTED. Plaintiffs' Motion for Summary Judgment on Count I is DENIED in its entirety. Plaintiffs' Motion for Summary Judgment on Counts II and III is GRANTED insofar as a declaratory judgment is requested and DENIED insofar as Plaintiffs seek substantive equitable relief. Plaintiffs' Motion for Summary Judgment on Count VI is DENIED. Plaintiffs' claims for declaratory relief on Counts IV, V, and VI are DISMISSED. Plaintiffs' Motion for Class Certification is hereby rendered moot, and thus is also DENIED.

*SO ORDERED.*